```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                          WESTERN DIVISION

UNITED STATES OF AMERICA,  )   Docket No. 11 CR 50062
                           )
            Plaintiff,     )   Rockford, Illinois
                           )   Thursday, February 28, 2013
       v.                  )   9:30 o'clock a.m
                           )
DAYTON POKE,               )
                           )
            Defendant.     )
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE FREDERICK J. KAPALA

APPEARANCES:

| | |
|---|---|
| For the Government: | HON. GARY S. SHAPIRO<br>Acting United States Attorney<br>(327 S. Church Street,<br> Rockford, IL  61101) by<br>MR. MARK T. KARNER<br>MR. JOSEPH C. PEDERSEN<br>Assistant U.S. Attorneys |
| For the Defendant: | BYRD & TAYLOR<br>(308 West State Street,<br> Suite 450,<br> Rockford, IL  61101) by<br>MR. MARK A. BYRD |
| Also Present: | MR. DANIEL IVANCICH<br>Special Agent, ATF |
| Court Reporter: | Mary T. Lindbloom<br>327 S. Church Street<br>Rockford, Illinois  61101<br>(815) 987-4486 |

PDF created with pdfFactory trial version www.pdffactory.com

1    MR. KARNER: Good morning, your Honor. Mark Karner and
2  Joe Pedersen on behalf of the United States.
3    MR. BYRD: Good morning, your Honor. Mark Byrd on
4  behalf of the defendant, who is present beside me.
5    THE COURT: Good morning. This case is set for status
6  pending the defendant's motion for continuance; is that correct?
7    MR. BYRD: Yes, Judge, that is correct. As set forth
8  in the motion, this involves the material witness that the
9  Marshal's Office has been attempting to obtain service on.
10   THE COURT: That's Daron Cistrunk, right?
11   MR. BYRD: Yes, sir. And previously I provided your
12 Honor with a copy of Mr. Cistrunk's affidavit that pretty much
13 sets forth in general terms what we expect his testimony to be.
14   THE COURT: I think this is the same reason we
15 continued the last time, wasn't it?
16   MR. BYRD: Yes, it is, Judge. And last time your Honor
17 had authorized the issuance of a Rule 17 subpoena for
18 Mr. Cistrunk and had ordered the Marshal's Service to attempt to
19 effectuate service.
20   THE COURT: And you had an address in Gary, Indiana.
21   MR. BYRD: Yes, that's correct.
22   THE COURT: Okay. So, what happened on January 18th to
23 effectuate service?
24   MR. BYRD: On January 18th -- was that --
25   THE COURT: That was the date --

PDF created with pdfFactory trial version www.pdffactory.com

1         MR. BYRD:  Right.  On January 18th the court issued
2  that order.  I prepared a subpoena and delivered it with the new
3  court trial date to the Marshal's Service.  I believe the
4  following day --
5         THE COURT:  When was that?
6         MR. BYRD:  Pardon me?
7         THE COURT:  When did you give it to the Marshal's
8  Service?
9         MR. BYRD:  I believe the following day after I went
10 back and drafted it, and from there it was in their hands, and I
11 don't know exactly when or what efforts were made to serve him
12 I have heard that on one occasion the Marshal's Office went out
13 there, talked to his mother, talked to his sister.  So, the
14 address appears to be valid.
15        This is based on conversations I had with Debbie
16 LoMonaco in the Marshal's Office.  The mom was not very
17 cooperative.  The daughter was a little more cooperative, but
18 indicated that he comes and goes to that residence, and nobody
19 really knows when he's going to come and go.  They left a card
20 for him to call and made it clear to him that they were not
21 there to serve an arrest warrant, but rather a subpoena for
22 trial.
23        THE COURT:  When was that?
24        MR. BYRD:  I believe they also may have spoken --
25        THE COURT:  When was the card left?

1      MR. BYRD: That, sir, I don't know the answer to. I
2  don't know.
3      THE COURT: Jason or Bruce, do you have any way to
4  enlighten us?
5      MARSHAL HERGENROEDER: Your Honor, Frank Schermer may
6  be more aware than I am  He's back there.
7      MARSHAL SCHERMER: Your Honor, it was a date last week
8  that they made attempt to serve him and left him a card.
9      THE COURT: When did the Marshal's Office get the
10 subpoena?
11     MARSHAL SCHERMER: It was earlier in February. It was
12 mailed certified to them sometime in the first week of February
13 I believe they received it. I can get the exact date for you if
14 you need it.
15     THE COURT: Okay. Why did it take three weeks to mail
16 the subpoena?
17     MARSHAL SCHERMER: I don't have an answer for you, sir.
18     THE COURT: And then what happened after it was mailed?
19     MARSHAL SCHERMER: It was in the hands of the USMS
20 Hammond officer.
21     THE COURT: All right. And then what happened after
22 that?
23     MARSHAL SCHERMER: I imagine it was assigned to a
24 deputy to exact service upon Mr. Cistrunk.
25     MR. KARNER: I could be wrong on this because I'm

1  hearing it through hearsay. I think there was only one physical
2  attempt made to serve the subpoena, right?
3           MARSHAL SCHERMER: I can't say that for certain.
4           MR. BYRD: That was the impression I was left with,
5  Judge. When I spoke -- it was either with Ms. LoMonaco or
6  Mr. Schnoor, and that was -- I know there was some discussion of
7  efforts last week and even earlier this week to try to go out
8  and serve him I think I had informed Susan of that, that they
9  were going to make another attempt. I don't know if that
10 actually happened prior to the motion getting filed, but as of
11 Monday, I believed that it was necessary to file the motion.
12          Obviously, the witness is a witness material to the
13 defense. In fact, his testimony is critical on one issue, and
14 that's the issue of the gun that was located in the vehicle. My
15 client's charged with a 924(c) charge, and there's a very good
16 likelihood that if he's convicted of that, he would be
17 determined to be a career criminal and after trial would be
18 facing 30 years to life.
19          So, I believe the ends of justice provision really
20 works in our favor in this case. We need Mr. Cistrunk here.
21 Once he's here, I don't know if he's going to testify consistent
22 with the affidavit in my earlier meetings with him, but I did
23 have two meetings with him in the summer of last year where he
24 did indicate consistent with his affidavit that the gun was his.
25 He had borrowed the vehicle earlier and had neglected to tell

PDF created with pdfFactory trial version www.pdffactory.com

1  Mr. Poke that the weapon was in the car when Mr. Poke took the
2  car from him
3           THE COURT: It seems to me that somebody or many people
4  are dragging their feet on this thing. If you delivered the
5  subpoena on January 19th, the Marshal should have done more than
6  mail it three weeks later. And, Mr. Byrd, I think you should
7  have done more to make sure to find out what was going on. If
8  you have to call them every day and find out what the status
9  is --
10          MR. BYRD: Judge, I tried with the Marshal's Office
11 several times to see if service had been obtained, and each time
12 I was told there had been no return yet. Short of that, I'm not
13 sure what efforts I can make to effectuate the Marshal's Office
14 in Hammond, Indiana, serving the subpoena.
15          THE COURT: What's the government's position?
16          MR. KARNER: Well, based on our belief that only one
17 attempt, physical attempt, has been made, we're not objecting to
18 that motion because -- well, I wonder, Judge, and this is just a
19 thought aloud, if perhaps a material witness subpoena could be
20 issued for this, which would I guess step up the pressure or
21 step up the efforts to get this person. I think one last
22 continuance ought to do it. If he can't be found to be served
23 within the time frame allotted by the court, then we've got to
24 push ahead. I mean, we can't just push this off indefinitely.
25          THE COURT: No, I agree with that. There has to be

PDF created with pdfFactory trial version www.pdffactory.com

1  more done than just mail something three weeks after the
2  subpoena was received and then wait until a couple days before
3  trial to find out what happened with the mailing.
4           MR. KARNER:  I completely agree, Judge.  I completely
5  agree with the court, and we'll do everything we can to help in
6  that effort.  I was just thinking out loud, really.
7           THE COURT:  What's a material witness subpoena?  Is
8  that a special kind of subpoena?
9           MR. BYRD:  Judge, when I spoke with Ms. LoMonaco, that
10 was mentioned because one of the things that she had indicated
11 to me is that the protocols are different and less aggressive if
12 they're serving a subpoena, as opposed to serving a material
13 witness warrant.  Although she didn't specify exactly what the
14 difference in protocol was, generally I think they are more
15 aggressive in doing that.
16          I have not asked her that yet because my understanding
17 is the defendant -- or not the defendant -- the witness is
18 actually arrested and brought before your Honor, as a defendant
19 would be in custody, is entitled to a bond hearing, an attorney
20 has to be appointed for him  My concern is that this witness,
21 if he does have any propensity to follow through and testify
22 consistent with his affidavit, that's certainly not going to
23 help the defendant that he has to be arrested and brought in.
24 However, I would prefer that to continuing to chase our tail
25 trying to locate him because it seems somewhat apparent he is

PDF created with pdfFactory trial version www.pdffactory.com

1  being evasive.

2  As I indicated in my original motion and then detailed
3  in this motion, I made numerous attempts to contact him, spoke
4  to his mother myself, encouraged him to have him call me so we
5  could discuss the case and arrange for him to receive a subpoena
6  on the original trial date that was set.

7  In addition, I know Agent Ivancich did speak to him by
8  phone. He was able to get him to call him back. They had a
9  conversation regarding the case, and he was supposed to contact
10 Agent Ivancich in order to arrange a face-to-face meeting so he
11 could be questioned further and did not ever contact him again.

12 THE COURT: But this address that you had in Indiana is
13 in Gary, Indiana?

14 MR. BYRD: Yes, sir.

15 DEFENDANT POKE: Excuse me, your Honor. Can I speak?

16 THE COURT: No, not yet.

17 Agent Ivancich, can you shed any light on where
18 Mr. Cistrunk is? Apparently, he's in Gary, Indiana, sometimes.
19 Do you know where he is when he's not in Gary, Indiana?

20 MR. IVANCICH: He used to live here in Rockford, and
21 when I tried to initially locate him, I found out that he just
22 recently had moved out, but I did talk to his mother, and I
23 talked to his cousin, and I impressed upon them I needed to talk
24 to him  They said they didn't know where he stayed, that he
25 comes and goes. They thought he was in Indiana. I ended up

1  finding an address in Indiana through research using an accurate
2  database. It's a public records database. He has a driver's
3  license for Indiana.
4  But I was going to go to Indiana, but then he ended up
5  calling me, and I talked to him on the phone, and we had a very
6  candid conversation about what he would testify to in court. I
7  don't know if I can share my thoughts at this point, but it's
8  different than what's in the affidavit. I think that's part of
9  the reason why he's not around. I think he's realized that
10 maybe he didn't tell the whole story.
11 THE COURT: This material witness subpoena involves an
12 arrest?
13 MR. BYRD: That's my understanding. I haven't fully
14 researched it. I did look at the statutory provision, and it
15 suggested that he is basically placed under arrest, brought to
16 the court, and can obtain bond, with the idea being that we
17 would then have the opportunity to depose him, and that way if
18 he doesn't show up to honor the subpoena that we could proceed
19 with his evidence deposition.
20 MR. KARNER: That's my understanding, as well.
21 MR. BYRD: And I'm sorry. I don't have the provision
22 in front of me as far as where that's at in the code.
23 MR. IVANCICH: Judge, I shared the information I had,
24 the phone number and the last known address and even his
25 mother's phone number, with Mr. Byrd and the Marshal's Service.

PDF created with pdfFactory trial version www.pdffactory.com

1   THE COURT: I think that maybe the best way to proceed
2   would be to issue a regular subpoena, notify Mr. Cistrunk in any
3   way we can that if he doesn't comply with the regular subpoena
4   that a material witness subpoena will be issued, which involves
5   his arrest. But I don't want to wait 'til a couple days before
6   trial to do all this.
7   MR. BYRD: Judge, I can have the subpoena prepared.
8   I'm in front of your Honor at 10:00 o'clock on another matter
9   and in front of Magistrate Mahoney at 11:00 on another matter.
10  Then I can get it prepared this afternoon and to the Marshal's
11  Office by the end of the day with a new date.
12          But just so the court's aware, there is another issue
13  that has arisen this morning. I met with Mr. Poke before court,
14  and I believe he at this time wants to ask your Honor to have me
15  removed as counsel and replaced with somebody else. To that, I
16  would let him speak to it, if it please the court.
17          THE COURT: Is that what you wanted to talk to me
18  about?
19          DEFENDANT POKE: Yes. I mean, basically, Judge, the
20  same way like you feel he should be doing more, I feel like he
21  should be doing more, too. He's not been doing nothing. I've
22  been patient with the court. I've been trying to work with him
23  for the last year. I'm not getting nothing did. And I'm ready
24  to proceed on, too, but I can't proceed farther with getting to
25  trial if me and Mr. Mark ain't doing no work.

PDF created with pdfFactory trial version www.pdffactory.com

1     THE COURT: Well, Mr. Byrd is probably the hardest
2  working CAJ attorney that I've had in court with me. He does an
3  excellent job. Other clients who have received the benefit of
4  his service have praised him for what he's done, have talked in
5  glowing terms about the kind of work he performs for them And
6  so, what I'm telling you is you have one of the best attorneys
7  in the panel, as far as I'm concerned.
8     DEFENDANT POKE: That's your opinion, you know. I
9  ain't taking nothing from him
10    THE COURT: All right. You're going to have to do this
11 then. File a written motion. Get that to me -- file it as soon
12 as you can. I'll set it for status as soon as I can. List the
13 reasons that you think that Mr. Byrd is not doing the job that
14 he's supposed to do.
15    DEFENDANT POKE: It's more. I mean, I don't get my
16 proper paperwork. I don't talk to him It's hard to -- this is
17 the only time I see him
18    THE COURT: Well, I think one of the problems is you've
19 been at MCC, haven't you?
20    DEFENDANT POKE: Yeah, but even with the phone, I can't
21 reach him on the phone. I can't reach him on the e-mail. I
22 need to -- I mean, I got to have some contact with him besides
23 just here.
24    THE COURT: All right. You're going to have to file a
25 written motion, and I'm going to have to look at it, and then

PDF created with pdfFactory trial version www.pdffactory.com

1  we're going to have to resolve it. But file the written motion
2  as soon as you can. List the things in the written motion that
3  you feel show that Mr. Byrd is not doing the job that he's
4  supposed to do.
5       DEFENDANT POKE: He's not in my best interests.
6       THE COURT: Well --
7       DEFENDANT POKE: I mean, I get misled. I get misled to
8  information that I know don't be proper.
9       THE COURT: I'll leave an open mind as to whether he's
10 doing what he's supposed to do. I can't set aside the fact that
11 I know he's done an excellent job in countless other cases. But
12 I'm not -- you know, I'm not prejudging your motion. File your
13 motion, and I'll keep an open mind. I'll look at it, and I'll
14 resolve it the best way I can.
15      MR. BYRD: May I have a moment, Judge?
16   (Brief pause.)
17      THE COURT: All right.
18      DEFENDANT POKE: I'm set for trial. We ain't talked
19 about nothing. Like if we was risked to go to trial next week,
20 we ain't talked about nothing, except you denied the motion.
21 Where that leave with me with six days?
22      THE COURT: Who represented you in the motion to
23 suppress?
24      DEFENDANT POKE: I mean --
25      THE COURT: That was Mr. Byrd, wasn't it?

PDF created with pdfFactory trial version www.pdffactory.com

|   |   |
|---|---|
| 1 | **DEFENDANT POKE:** Yeah. |
| 2 | **THE COURT:** Or was it somebody else? |
| 3 | **DEFENDANT POKE:** Yeah, it was Mr. Byrd, and I feel like |
| 4 | he could have did better with that. That's what I said when I |
| 5 | said -- |
| 6 | **THE COURT:** Well, I denied the motion. If you're going |
| 7 | to blame somebody on that, blame it on me because I'm the one |
| 8 | that looked at the facts, looked at the law, and decided that |
| 9 | your motion should not be granted. Don't lay that on his |
| 10 | doorstep. He did everything I think an attorney can do. |
| 11 | **DEFENDANT POKE:** How you feel he did -- like you taking |
| 12 | it upon yourself to feel like he did everything he could have |
| 13 | when if he could have, he would have challenged the traffic |
| 14 | stop, when that's the most important part of the case. If he |
| 15 | would have, he wouldn't have answered most of the officer's |
| 16 | questions for him during the motion hearing. He should have let |
| 17 | the officer answer his own questions. |
| 18 | I wasn't even really addressing the motion hearing, |
| 19 | just how the case been going on, anyway, with me getting my |
| 20 | proper paperwork, with him talking to me, with him creating a |
| 21 | defense, and with him talking to Mr. Byrd (sic) about stuff that |
| 22 | I talk to him about. I mean, the same way Gaziano gave him some |
| 23 | paperwork that I gave to -- my other lawyer that got fired |
| 24 | before him -- gave my defense to him That's how he knew about |
| 25 | the affidavit way before anybody, and he never -- and they never |

1  returned the paperwork to my second lawyer.  He never got it.
2  So, they're working with the government.  He's working with the
3  government, and he's not in my best interests, and I can't have
4  him defending me.
5        THE COURT:  Well, I strenuously disagree that Mr. Byrd
6  is colluding with the government to try to somehow work against
7  you.
8        The only reason I bring up the motion to suppress is to
9  remind everyone that Mr. Byrd has had many conversations with
10 you about the facts of this case.  It's not like he was assigned
11 and he hasn't done anything.  But, again, I'm going to keep an
12 open mind.  I'm not going to prejudge your motion.  File the
13 motion.  List the reasons why you think he's not doing a good
14 job, and --
15        DEFENDANT POKE:  I mean, I --
16        THE COURT:  -- I'll look at it and resolve it.
17        DEFENDANT POKE:  I didn't even know I had a court date
18 today.  I couldn't even get e-mailed that.  I mean, if me and
19 him is not -- if we not doing no work, how can this relationship
20 get -- you keep me with him  We're not doing no work.  Ask him
21 what he did, like simple as that.
22        THE COURT:  I'll tell you one more time, and I'm not
23 going to say it again.  File your motion.  List all the reasons
24 you think he isn't doing the job that he's supposed to do.  In
25 order for him to be removed from the case, there are certain

PDF created with pdfFactory trial version www.pdffactory.com

1   legal principles that apply. I will consider those, and I'll
2   make the best decision that I can on your motion.
3          DEFENDANT POKE: I mean, he just led me into a proffer
4   meeting --
5          THE COURT: All right. That's enough. That's enough.
6          I'll grant the motion. I'll set this matter for trial
7   on March 25th --
8          DEFENDANT POKE: (Continuing) -- trying to get me to
9   make statements on myself. I mean --
10         THE COURT: -- starting at 9:00 a.m  I'll give you
11  three days. Mr. Karner.
12         MR. KARNER: Is there any way -- is there any steps
13  that can be taken to coordinate with the Marshal's Service, more
14  frequent attempts to serve the subpoena, so we don't run into
15  this problem again?
16         THE COURT: I say call them every day if you need to.
17  If they don't do what they're supposed to do, then I suppose
18  you'll have to bring the matter in front of me. It's been my
19  experience that the Marshal's Service does a good job.
20         MR. KARNER: Oh, I agree.
21         THE COURT: If there's a problem, we need to straighten
22  it out. But I don't want to wait the week before trial to find
23  out that one of the material witnesses isn't available. We need
24  to be on this now. We need to -- you know, Mr. Byrd's going to
25  file the subpoena this afternoon. Let's follow it up every day

PDF created with pdfFactory trial version www.pdffactory.com

1  or two and make sure something's happening. If it's not, then
2  it needs to come in front of me, and we need to bring the
3  Marshal in and find out why things aren't going the way they're
4  supposed to go.
5          MR. KARNER: Yes, sir.
6          MR. BYRD: Judge, if I could ask the court's guidance.
7  When would you feel it would be an appropriate time prior to
8  March 25th to come back into court, assuming that service isn't
9  effectuated? I guess the next step, assuming they don't get him
10 served, would be to request that material witness warrant. I'd
11 rather have him physically here and angry than not here at all.
12         THE COURT: Call my clerk and set it any morning. I
13 mean, the first three days next week have suddenly opened up for
14 me. So, we can set it anytime there. I have a hearing up in
15 Rockton at 9:00 o'clock on March 7th, but you can set it on my
16 status call. Call my clerk. I'll fit you in the next day
17 sometime.
18         MR. BYRD: We should give them some time to try to get
19 him served.
20         THE COURT: Right.
21         MR. BYRD: So, maybe that's too early. And then if
22 Mr. Poke files a written motion requesting me to be removed, we
23 can do it at a status date.
24         THE COURT: Get that in front of me as soon as possible
25 because if we do need to get another attorney on this, then that

PDF created with pdfFactory trial version www.pdffactory.com

1    attorney needs to have time to get ready for the trial on the
2    25th.  So, as soon as Mr. Poke files his motion, call my clerk.
3    I'll put it in front of me, and I'll hear it.
4              MR. BYRD:  Thank you, your Honor.
5              MR. KARNER:  Judge, would your Honor then order that
6    the subpoenas that have been served on the government's
7    witnesses be continued to March 25th?
8              THE COURT:  Yes.
9              DEFENDANT POKE:  Excuse me, but this guy been trying to
10   turn hisself in for two years.  I mean --
11             THE COURT:  Pardon me?
12             DEFENDANT POKE:  This guy been trying to turn hisself
13   in for two years.  He talked to my lawyer several times on
14   turning himself in.  He was misled to thinking that he --
15   Mr. Mark Byrd told him he got to come on the day of trial.
16   That's the only way he could have got this situation resolved.
17   So, now, I mean, the guy confused.
18             THE COURT:  Can you -- is there any way you can contact
19   people to find out where he is?
20             DEFENDANT POKE:  No.  He been -- everything he been
21   doing he been doing on his own free will.  I mean, the guy been
22   misled.  He been trying to turn hisself in for two years.  They
23   withhold the affidavit from you 'til what?  Just -- you just got
24   it, and I been telling him to turn that in to you.
25             MR. KARNER:  Your Honor, I would move to exclude the

PDF created with pdfFactory trial version www.pdffactory.com

1  time period from today through and including March 25th from
2  calculation of the speedy trial period pursuant to 18 U.S.C.
3  3161(h)(7).
4         THE COURT: Mr. Byrd?
5         MR. BYRD: Judge, I have made the motion under the ends
6  of justice provision based on the fact that I believe
7  Mr. Cistrunk is an essential and material defense witness and
8  that the ends of justice would support that. So, I have no
9  objection to the government's motion.
10        THE COURT: All right. I'll find that the failure to
11 grant the continuance would result in a miscarriage of justice,
12 and it would be unreasonable to expect adequate preparation for
13 the trial itself within the speedy trial period in view of the
14 fact that Mr. Cistrunk has not been made available to appear on
15 behalf of the defense.
16        Not to grant the continuance would deny the defense
17 reasonable time necessary for effective preparation taking into
18 account the exercise of due diligence. I find the ends of
19 justice served by taking such action outweigh the interest of
20 the public and the defendant in a speedy trial. I'll exclude
21 the time period between now and March 25th.
22        Mr. Poke, if you have some way of finding where
23 Mr. Cistrunk lives, please let us know, and we'll do whatever we
24 need to do to get him served. I want to get him into court.
25 You want to get him into court. I want to get all the evidence

1  before the jury so they can make an informed decision on this
2  case, but we all need to work together to get him here.
3       DEFENDANT POKE:  I mean, the government was in contact
4  with him  He corroborated his affidavit, and now they saying
5  they can't find him  I mean, you see what I seen.  It took them
6  three weeks to even start to get the subpoena out.  So, they
7  wasn't really trying, was they?
8       MR. KARNER:  Judge --
9       THE COURT:  I don't know.  I haven't heard from the
10 Marshal's Service on that.
11      MR. KARNER:  And this is just a question I have to the
12 court.  Does the court think it would be beneficial to set
13 another final pretrial conference in this case?
14      THE COURT:  No.
15      MR. KARNER:  Okay.
16      THE COURT:  If there's some -- I mean, we've done a
17 pretrial conference.  I think we're all set to go.
18      MR. KARNER:  Right.
19      THE COURT:  If there's some matter that needs to be
20 addressed, call my clerk, set it on my call.  I'll accommodate
21 you.
22      MR. KARNER:  Yes, sir.
23      THE COURT:  All right.
24      MR. BYRD:  Thank you, your Honor.
25

PDF created with pdfFactory trial version www.pdffactory.com

1  (Which were all the proceedings had in the above-entitled
2  cause on the day and date aforesaid.)
3  I certify that the foregoing is a correct transcript from
4  the record of proceedings in the above-entitled matter.
5
6
   _____
7  Mary T. Lindbloom
   Official Court Reporter
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

PDF created with pdfFactory trial version www.pdffactory.com