```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                    WESTERN DIVISION

UNITED STATES OF AMERICA,    )    Docket No. 11 CR 50062
                             )
            Plaintiff,       )    Rockford, Illinois
                             )    Friday, January 18, 2013
       v.                    )    2:30 o'clock p.m
                             )
DAYTON POKE,                 )
                             )
            Defendant.       )

              TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE FREDERICK J. KAPALA

APPEARANCES:

For the Government:          HON. GARY S. SHAPIRO
                             Acting United States Attorney
                             (327 S. Church Street,
                              Rockford, IL  61101) by
                             MR. MARK T. KARNER
                             MR. JOSEPH C. PEDERSEN
                             Assistant U.S. Attorneys

For the Defendant:           BYRD & TAYLOR
                             (308 West State Street,
                              Suite 450,
                              Rockford, IL  61101) by
                             MR. MARK A. BYRD

Also Present:                MR. DANIEL IVANCICH
                             Special Agent, ATF

Court Reporter:              Mary T. Lindbloom
                             327 S. Church Street
                             Rockford, Illinois  61101
                             (815) 987-4486
```

1   THE COURT: Sorry I was late. I was looking at
2   Mr. Byrd's motion. Call the case, Susan.
3   THE CLERK: 11 CR 50062-1, U.S.A. v. Dayton Poke.
4   MR. KARNER: Good afternoon, your Honor. Mark Karner
5   and Joe Pedersen on behalf of the United States.
6   MR. BYRD: Good afternoon, your Honor. Mark Byrd on
7   behalf of the defendant, Dayton Poke, who is present beside me.
8   THE COURT: This case is set for a final pretrial
9   conference for a jury trial that is scheduled to commence on
10  January 28th, but I've received, just before I came on the
11  bench, defendant's motion to continue the jury trial, and the
12  motion seems to center on the unavailability of a Daron
13  Cistrunk.
14  MR. BYRD: Yes, sir, that's correct. Mr. Cistrunk is a
15  material witness in this case who prior to my involvement
16  provided an affidavit indicating that the firearm that was found
17  in the vehicle was, in fact, his firearm
18  THE COURT: Where is the affidavit?
19  MR. BYRD: I have a copy for your Honor.
20  THE COURT: And what was the purpose of preparing the
21  affidavit?
22  MR. BYRD: Judge, it was prepared before my involvement
23  in the case. I had nothing to do with the preparation. I
24  assume to nail Mr. Cistrunk down in his statement that the gun
25  was, in fact, his so that in the event he were to take a

PDF created with pdfFactory trial version www.pdffactory.com

1   different position, it would be there to serve as impeachment,
2   perhaps.
3           THE COURT: Who secured the affidavit?
4           MR. BYRD: It might have been Mr. Poke's prior
5   attorney. I'm not sure.
6           MR. KARNER: Well, we believe --
7           MR. BYRD: In state court. It may not have been.
8           MR. KARNER: We believe that the defendant's girlfriend
9   had a role in securing the affidavit.
10          MR. BYRD: But I will note for the court I did have
11  pretrial interviews with Mr. Cistrunk in my office back on
12  June 26th and July 20th, as set forth in the motion. At that
13  time he had indicated a willingness to come to court and testify
14  consistent with the affidavit. He had given me an address of
15  825 Horsman Street here in Rockford and a phone number that I
16  could reach him at. Once we had a trial date, I began trying to
17  contact Mr. Cistrunk and left several messages at that number.
18          THE COURT: When was that?
19          MR. BYRD: It was prior to the holiday, Judge, and I
20  did not document those because at that point I had no reason to
21  believe that he was dodging trying to contact me, other than
22  generally not returning calls, which is not uncommon.
23          I had conversations with Mr. Karner and with Special
24  Agent Ivancich and had been told that they were under the
25  impression that he had left the Rockford area and was living

Case: 3:11-cr-50062 Document #: 85 Filed: 04/30/13 Page 4 of 18 PageID #:650

4

1     somewhere in the Gary, Indiana, area.

2         I then started documenting phone calls that I made. I
3 made one on January 2nd to that number, left a message. Tried
4 again on January 7th, left a message. Called again and left a
5 voice mail message on January 8th. Called a second time on
6 January 8th and actually spoke to an individual who identified
7 herself as Mr. Cistrunk's mother. We had a conversation where I
8 impressed upon her the importance of having Mr. Cistrunk contact
9 me to arrange for a further interview and to also arrange for
10 the service of the subpoena.

11         About eight days ago, nine days ago -- I'm not sure of
12 the exact date -- I received disclosures from the United States,
13 one of which was a proffer report of an interview telephonically
14 on December 17th between Mr. Cistrunk and Special Agent
15 Ivancich, and in that disclosure it indicated that Mr. Cistrunk
16 disclosed an address to Special Agent Ivancich of xxx xxxx
17 xxxx xxxxxx, Gary, Indiana, and at that time the witness further
18 affirmed that he intended to testify at trial at the end of
19 January of 2013.

20         That has been the extent of my efforts to contact the
21 defendant. I did speak with Ms. LoMonaco last week to try to
22 ascertain whether or not there would be sufficient time to get
23 the defendant served in Gary, Indiana, and she was skeptical.
24 She didn't say it was impossible. But my concern is as we
25 approach the trial date, if this isn't addressed and efforts

1  aren't made to try to get Mr. Cistrunk served, we could be in a
2  situation where he decides not to show up.
3      Certainly, there are potential consequences to him in
4  testifying in this case and admitting that he had a firearm
5  That concerns me. And I believe it's incumbent upon me to try
6  to get the defendant served with a subpoena.
7      MR. KARNER: You mean --
8      THE COURT: You mean Cistrunk.
9      MR. BYRD: I mean Mr. Cistrunk served with a subpoena.
10 I believe that under the ends of justice provision of the Speedy
11 Trial Act this is of such paramount importance that this could
12 affect the outcome of all of the possession of firearm charges
13 that this defendant faces. He is charged with a 924(c) count,
14 and the government maintains that he'll be a career criminal.
15 That could put him on a track of 30 years to life if he's
16 convicted of that charge.
17     I can't see a more significant witness than
18 Mr. Cistrunk. I feel it's important for me to have an
19 opportunity to interview him again prior to his testimony,
20 especially in light of some of the things that were disclosed in
21 the telephonic interview between him and Mr. Ivancich.
22     He appears to have dropped off the grid and isn't
23 returning calls. So, I'm asking the court's efforts to employ
24 the marshal to try to get him served at that address in Gary,
25 Indiana.

PDF created with pdfFactory trial version www.pdffactory.com

1    THE COURT: Mr. Karner?
2    MR. KARNER: Your Honor, if the court believes that
3    this testimony is relevant and that Mr. Byrd has been duly
4    diligent in trying to procure the witness' attendance, then we
5    have no objection.
6    THE COURT: How do we know we can't get him served?
7    MR. BYRD: Judge, it's just based on the late time
8    frame and my discussions with Ms. LoMonaco, where she
9    indicated -- and she didn't say it was impossible, and they
10    certainly would try, but she said that it would have to be done
11    through the Marshal's Office in Gary, I believe, and that it
12    might not be possible to have that accomplished by the 28th,
13    especially if he's actively dodging trying to talk to us.
14    MR. KARNER: The only thing I would add to Mr. Byrd's
15    motion is that after Agent Ivancich spoke to Mr. Cistrunk on the
16    phone and interviewed him, they had agreed to have further phone
17    contact, and I believe that Agent Ivancich tried to contact
18    Mr. Cistrunk after that and never received a return phone call.
19    We do believe that that is his current address, what we
20    provided to Mr. Byrd. I think, though, that United States v.
21    Austin is probably instructive on that, on whether or not the
22    court should grant that.
23    THE COURT: I'm sorry. I didn't hear that.
24    MR. KARNER: U.S.A. v. Austin.
25    MR. BYRD: Is it Austin or Williams?

PDF created with pdfFactory trial version www.pdffactory.com

1  MR. KARNER: I'm sorry. Williams. Austin was the
2  codefendant.
3  THE COURT: All right. I'll grant the motion to
4  continue. What kind of time frame are we looking at then?
5  MR. BYRD: Judge, the defendant has asked me -- he's
6  indicated to me today that there's some additional issues he's
7  wanting me to look at in the interim So, I would request that
8  we set this for a status in 30 days, toll the time, and allow
9  any pretrial motions that arise out of the case law that he
10 wants me to take a look at on those issues. And I have not
11 discussed what the issues are or what the cases involve, but I
12 will do that and take a look at it.
13 So, if we could maybe set a status in three or
14 four weeks. And then I don't know. Would it be prudent to have
15 Mr. Cistrunk subpoenaed for that status date and brought in?
16 THE COURT: No, no, no. Why don't we just set it for
17 trial.
18 MR. KARNER: That's my request is that we set it for
19 trial. It's going to involve a lot lengthier delay to set it
20 for status and then another trial date.
21 MR. BYRD: Okay. That's fine. Then I would ask if we
22 could set it in 30 to 45 days. That will give the Marshal's
23 Service plenty of time to get Mr. Cistrunk served and time for
24 me to evaluate what, if any, additional information Mr. Poke has
25 and wants me to look at.

1    THE COURT: Do you still think it will take three days?
2    (No response.)
3    THE COURT: Do you still think it will take three days?
4    MR. BYRD: Yes, I think so.
5    MR. KARNER: Yes.
6    THE COURT: I'll set this for March 4th, 5th, and 6th.
7    MR. KARNER: Your Honor, I would move to exclude the
8    time period from today through and including March 4th, 2013,
9    from calculation of the speedy trial period pursuant to
10   18 U.S.C. 3161(h)(7).
11   MR. BYRD: Judge, there's no objection to that motion.
12   THE COURT: I find that failure to grant such a
13   continuance would result in a miscarriage of justice and that
14   due to the difficulty of obtaining the presence of a material
15   witness for the defense, it would be unreasonable to expect
16   adequate preparation for the trial itself within the time limits
17   established by the speedy trial section and further would deny
18   counsel for defendant the reasonable time necessary for
19   effective preparation taking into account the exercise of due
20   diligence. The court finds that the ends of justice served by
21   taking such action outweigh the interests of the public and the
22   defendant in a speedy trial.
23   Can't we go ahead with the final pretrial conference
24   now?
25   MR. BYRD: Yes, Judge. One thing if I can ask prior

1      to.  Do I need an order from your Honor to order the Marshal's
2      Service to attempt to effectuate service on Mr. Cistrunk and, if
3      so, can I have that, please?
4              THE COURT:  Granted.
5              MR. BYRD:  Thank you.
6              THE COURT:  All right.  There's been a 404(b)
7      disclosure by the government.  Any objection by the defense?
8              MR. BYRD:  No, Judge.
9              THE COURT:  Also, a 609.
10             MR. KARNER:  Just to alert the court, we will be -- I
11     take that back.  I'm sorry for interrupting.
12             THE COURT:  Did you want to say something?
13             MR. KARNER:  No.
14             THE COURT:  All right.  There's also a 609 disclosure.
15     Any objection?
16             MR. BYRD:  No, Judge.
17             THE COURT:  You agree that if the defendant testifies
18     that those convictions may be used for purposes of impeachment?
19             MR. BYRD:  Yes, Judge.  They're all felonies within
20     ten years.  I believe that would be appropriate.
21             THE COURT:  All right.  I want to take a look at them
22     first before I issue an order.
23             MR. KARNER:  Take a look at which, your Honor?
24             THE COURT:  I'm going to look at both motions, both
25     pretrial motions, and I may or may not agree with Mr. Byrd.

PDF created with pdfFactory trial version www.pdffactory.com

1    MR. KARNER: Okay.

2    THE COURT: As to proposed voir dire, I will
3    incorporate the government's questions numbered one through
4    eight in my standard questions. When I say I'll incorporate a
5    proposed question, it may not be in the exact wording you have
6    proposed, Mr. Karner, but I believe I will address your concerns
7    and capture the main points of your suggestions. I'll remind
8    the parties that when we meet at sidebar during voir dire,
9    you'll be able to suggest follow-up questions.

10   Alternate jurors for a three-day trial. Let's say two,
11   just to give ourselves a safety cushion.

12   If during my individual questioning of a juror the
13   parties agree that the juror should be excused for cause, tell
14   me at sidebar so we don't have to go through the entire
15   examination.

16   Defendant has ten peremptory challenges. The
17   government has six. There's no backstriking. If you don't use
18   a peremptory challenge at the first opportunity, you cannot use
19   it after the other party accepts the juror.

20   Do either parties wish my opening remarks to the jury
21   panel and the preliminary instructions to the jury to include an
22   explanation of rights -- of the defendant's right not to
23   testify?

24   MR. KARNER: We'll defer to the defense.

25   MR. BYRD: No, Judge, that won't be necessary.

PDF created with pdfFactory trial version www.pdffactory.com

1           THE COURT: In my preliminary instructions to the jury,
2   do the parties wish me to comment on the difference between
3   direct and circumstantial evidence?
4           MR. KARNER: The government does.
5           MR. BYRD: Defendant concurs.
6           THE COURT: List of witnesses.
7           MR. KARNER: Judge, it was in a state of change. I can
8   have that on file by today, end of business today.
9           THE COURT: Okay. Well, there's no critical need to
10  have it. If you can just have it to me by the end of next week.
11          MR. KARNER: Yes, sir. Thank you.
12          THE COURT: The list of witnesses should include the
13  name, the city that they live in, not an address, just the city.
14  I'd like the defense to ensure that their witnesses are included
15  on the list. I'll ask the government to prepare the list and
16  ensure that the list provided to me is the same list that the
17  jury panel will receive.
18          Defense acknowledges the government's list of expert
19  witnesses?
20          MR. BYRD: Yes, Judge. We received that.
21          THE COURT: Do either parties wish to make a motion to
22  exclude witnesses?
23          MR. KARNER: The government does.
24          MR. BYRD: Defendant concurs.
25          THE COURT: Any witnesses not currently testifying must

PDF created with pdfFactory trial version www.pdffactory.com

1    remain outside the courtroom  I'll hold the attorneys
2    responsible for enforcement of this order.
3             What about the statement of the case to be read to the
4    jury?
5             MR. KARNER:  Judge, I need to consult with Mr. Byrd on
6    that.  Can we have next week as a deadline on that, as well?
7             THE COURT:  All right.  'Til the end of next week.  Who
8    will be sitting at counsel table for purposes of introduction to
9    the jurors?
10            MR. KARNER:  I'll have a list, again by the end of next
11   week.  It's going to be Mr. Pedersen, I, and Mr. Ivancich, and
12   Lisa Seck will be in and out.
13            THE COURT:  And for the defense?
14            MR. BYRD:  Just myself and my client, Judge.
15            THE COURT:  Jury instructions.  Can I point out a few
16   matters that I think need some attention?
17            MR. KARNER:  Yes, sir.
18            THE COURT:  Government's Instruction 1, the third
19   paragraph should read "has proved the defendant," not
20   defendants.
21            MR. KARNER:  Yes, sir.
22            THE COURT:  Same with the second paragraph in
23   Government's Instruction Number 2.
24            Government's Instruction Number 3 was curious to me.
25   It seems like you repeat the first two paragraphs in the last

PDF created with pdfFactory trial version www.pdffactory.com

1   two paragraphs.
2           MR. KARNER:  I'll have to check on that, Judge.  Could
3   I report back to the court on that?
4           THE COURT:  I think you should take a good look at
5   1.03.  I don't think the fourth paragraph is appropriate unless
6   there's an affirmative defense.
7           MR. KARNER:  The fourth paragraph?
8           THE COURT:  The fourth paragraph.
9           MR. KARNER:  Okay.
10          THE COURT:  But take a good look at that.  It needs
11  some work.
12          MR. KARNER:  On 1.03?
13          THE COURT:  Right.  It's Government's Instruction
14  Number 3, but it deals with pattern instruction 1.03.
15          MR. KARNER:  Yes, sir.
16          THE COURT:  You do the same thing on Government's
17  Instruction Number 5.  You repeat the first two paragraphs in
18  the third and fourth paragraph.
19          MR. KARNER:  Okay.  I'll have to look at that.
20          THE COURT:  Government's Instruction Number 11.  I
21  think it should be "a witness made a statement," not "a
22  statements."
23          MR. KARNER:  Okay.
24          THE COURT:  In Government's 13, it should read, "You
25  have heard testimony that the defendant made a statement."  You

1   left out made.

2   MR. KARNER:  Okay.

3   THE COURT:  Government's 18.  The pattern instruction
4   reference should be 4.08, not 3.19.

5   In Government's Instruction 24, there are some
6   gratuitous brackets in the fourth line.  The word three is
7   bracketed.  I don't see any reason for it.

8   MR. KARNER:  No.  I'll change it.

9   THE COURT:  And in the second to the last paragraph,
10  there's a bracket after "considering" that I don't think belongs
11  there.

12  In 26 there's a bracket behind "considering" in the
13  next to last paragraph that is unnecessary.  And on 28 in the
14  first line, it should say, "The superseding indictment charges
15  the defendant," not defendants, in Count 3.  And, again, in the
16  last paragraph there are some gratuitous brackets.

17  Any stipulations as to uncontested facts?

18  MR. KARNER:  We may.  I haven't had a chance to talk to
19  Mr. Byrd about that because of other developments in the case,
20  but I'll sit down with Mr. Byrd, and we'll try and knock some
21  out.

22  MR. BYRD:  That's correct, Judge.  We'll talk about
23  that.

24  MR. KARNER:  If we're able to reach agreement by the
25  end of next week, should we just file proposed stips?

PDF created with pdfFactory trial version www.pdffactory.com

1   THE COURT: Yes, please. And is it all right with you
2   if I read them right after opening?
3   MR. BYRD: Sure.
4   MR. KARNER: Fine with me.
5   THE COURT: Do you have an exhibit list?
6   MR. KARNER: I will have an exhibit list. That's still
7   being compiled, and I'll have that by the end of next week, too.
8   THE COURT: How many exhibits do you expect?
9   MR. KARNER: Judge, it will be brief. Under probably
10  twelve. Well, including photographs, probably less than 20.
11  MR. BYRD: There may be some overlap, too, from
12  exhibits that I would want to use, several of which were used at
13  the suppression hearing.
14  MR. KARNER: It's going to be photographs, physical
15  evidence. We do have a handful of transcripts, too.
16  THE COURT: You're both experienced trial attorneys.
17  You've tried cases in this courtroom before. I assume you're
18  familiar with all the equipment.
19  MR. BYRD: Yes, Judge.
20  MR. KARNER: Yes.
21  THE COURT: We'll go 9:00 o'clock 'til 12:15 in the
22  morning and pick up at 1:45 and go to 5:00. I'd like you here
23  in court on Monday at 8:45 to tie up any loose ends. Disclose
24  the next day's witnesses to the opposition. You'll arrange to
25  have the defendant in civilian clothing?

PDF created with pdfFactory trial version www.pdffactory.com

1    MR. BYRD: We're working on that, Judge. He's
2  confident that his family will be able to get him some clothing.
3    THE COURT: All right. Mr. Poke, you have a right to
4  attend all sidebar conferences. You may waive that right. You
5  don't have to come up if you don't want to. You should discuss
6  that with Mr. Byrd. If you don't come up for a sidebar
7  conference when I call one, I assume that you waive your right
8  to be present. Do you understand?
9    DEFENDANT POKE: Yes, sir.
10    THE COURT: Is defendant taking any medications?
11    DEFENDANT POKE: Yes.
12    THE COURT: What are you taking?
13    DEFENDANT POKE: Gabapentin for nerve pain.
14    THE COURT: For nerve pain?
15    DEFENDANT POKE: Yeah.
16    THE COURT: Have you taken it today?
17    DEFENDANT POKE: Yeah.
18    THE COURT: How often do you have to take it?
19    DEFENDANT POKE: I take 1200 milligrams three times a
20  day.
21    THE COURT: Is there anything about that medication
22  that affects your ability to think or reason or make decisions?
23    DEFENDANT POKE: I mean, be drowsy most of the time. I
24  mean, other than that, not really.
25    THE COURT: Well, this is an important matter for you.

PDF created with pdfFactory trial version www.pdffactory.com

1    It has a great effect on what you're going to be doing --
2             MR. BYRD:  May I have a moment?
3             THE COURT:  -- for a good part of your life.
4        (Brief pause.)
5             MR. BYRD:  Judge, I spoke with Mr. Poke.  He indicated
6    that while the medicine does have a tendency to make him
7    somewhat drowsy, he doesn't believe that it will affect his
8    ability to assist me in the case, to listen to and understand
9    what the witnesses are testifying, and to assist me in
10   formulating questions.  I will note that he and I had about an
11   hour long meeting before court, and despite having taken his
12   medicine today, he appears to me to be lucid and well able to
13   reason.
14            THE COURT:  You can still think and make decisions
15   about what's your best interests?
16            DEFENDANT POKE:  Yes, sir.
17            THE COURT:  If you do find that taking this medication
18   somehow affects your ability to participate in this trial and to
19   communicate and discuss this case with your attorney, you should
20   talk to some medical professional to make some arrangements to
21   adjust it.
22            DEFENDANT POKE:  Okay.
23            THE COURT:  Does the defendant require any special
24   accommodation for any disability or impairment?
25            MR. BYRD:  I don't believe so, Judge.

PDF created with pdfFactory trial version www.pdffactory.com

1    You don't need a special seat or anything?
2    DEFENDANT POKE:  No.
3    THE COURT:  Okay.
4    DEFENDANT POKE:  No, sir.
5    THE COURT:  All right.  We'll see you on March --
6    MR. BYRD:  Judge, one thing.  I just want to note for
7    the record.  I had not filed my motion electronically yet
8    because I felt it was important to confer with Mr. Poke this
9    afternoon before doing that.  I will go back to my office and
10   file it forthwith.
11   THE COURT:  All right.  Thank you.
12   MR. BYRD:  Thank you.
13      (Which were all the proceedings had in the above-entitled
14      cause on the day and date aforesaid.)
15      I certify that the foregoing is a correct transcript from
16   the record of proceedings in the above-entitled matter.
17
18
     _____
19   Mary T. Lindbloom
     Official Court Reporter
20
21
22
23
24
25

PDF created with pdfFactory trial version www.pdffactory.com