1           IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
2                    WESTERN DIVISION

3    UNITED STATES OF AMERICA,    )    Docket No. 11 CR 50062
                                  )
4                  Plaintiff,     )    Rockford, Illinois
                                  )    Thursday, August 8, 2013
5            v.                   )    2:30 o'clock p.m.
                                  )
6    DAYTON POKE,                 )
                                  )
7                  Defendant.     )

8               TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE FREDERICK J. KAPALA
9
     APPEARANCES:
10
     For the Government:          HON. GARY S. SHAPIRO
11                                Acting United States Attorney
                                  (327 S. Church Street,
12                                 Rockford, IL  61101) by
                                  MR. MARK T. KARNER
13                                Assistant U.S. Attorney

14   For the Defendant:          LAW OFFICE OF BRENDAN W. CAVER, LTD.
                                  (308 West State Street,
15                                 Suite 97,
                                   Rockford, IL  61101) by
16                                MR. BRENDAN W. CAVER

17   Court Reporter:             Mary T. Lindbloom
                                  327 S. Church Street
18                                Rockford, Illinois  61101
                                  (779) 772-8309
19

20

21

22

23

24

25

1          THE CLERK:  11 CR 50062-1, U.S.A. v. Dayton Poke.

2          MR. KARNER:  Good afternoon, your Honor.  Mark Karner

3     on behalf of the United States.

4          MR. CAVER:  Good afternoon, your Honor.  Brendan Caver

5     on behalf of Dayton Poke, who is present in court.

6          THE COURT:  Show Mr. Poke appears.  Case comes before

7     the court on Mr. Caver's motion.

8          MR. CAVER:  Thank you, Judge.  If I may proceed.

9          THE COURT:  Yes.  Let me ask Mr. Poke a few questions.

10    What medications are you taking these days?

11         DEFENDANT POKE:  Gabapentin and Naproxen and some other

12    medication.  I forgot the name of it.

13         THE COURT:  All right.  Do you take them every day?

14    DEFENDANT POKE:  Yeah.

15         THE COURT:  Did you take them today?

16    DEFENDANT POKE:  The Naproxen.

17         THE COURT:  What are they for?

18    DEFENDANT POKE:  Neuropathal pain.

19         THE COURT:  Neuropathal pain?

20         MR. CAVER:  Neuropathological pain, I believe.

21         THE COURT:  All right.  And are all the medications for

22    that?

23         DEFENDANT POKE:  And I forgot -- I can't remember what

24    else they work for.  Like the calmness, behavior, or something.

25         THE COURT:  The what?

1         DEFENDANT POKE:  Like keep me calm.

2         THE COURT:  Calm.  Okay.  I see.  All right.

3         Well, let me ask you this.  Is there anything about

4    those medications that affects your ability to think or reason

5    or make decisions?

6         DEFENDANT POKE:  Not that I know of.

7         THE COURT:  All right.  Is there anything about those

8    medications that affects your ability to talk to Mr. Caver,

9    communicate with him?

10        DEFENDANT POKE:  Not that I know of.

11        THE COURT:  All right.  Please proceed, Mr. Caver.

12        MR. CAVER:  Thank you, Judge.

13        Judge, I had previously filed this motion for leave to

14   withdraw based on a meeting that I had with Mr. Poke in person

15   where he expressed his desire to represent himself.  Mr. Poke

16   and I -- I had gone to visit him to go over the presentence

17   report in person with him at the MCC, and at that time, without

18   divulging any substance of communication between the two of us,

19   he desired to represent himself.

20        Because as his attorney I know Mr. Poke cannot make

21   filings on his own, I went ahead because I wanted to take the

22   first opportunity I could.  I didn't want to wait any longer

23   than I absolutely had to in order to file a motion to give the

24   court the information it needed to be prepared for the

25   August 29th sentencing.

1              In the meantime, I think one of the misunderstandings

2      about some case law, I think we've clarified that.  However, I

3      still -- I would ask the court to consider the motion for leave

4      to withdraw.  Mr. Poke and I -- again without divulging any of

5      the substance of our communications, I believe it is still

6      Mr. Poke's desire to -- in spite of the fact that I think we did

7      come to an understanding about some of the interpretations of

8      the relevant case and statutory law, I think it is still his

9      desire to represent himself at sentencing in this case, Judge.

10             THE COURT:  Mr. Poke, it's been indicated to me that

11     you wish Mr. Caver to withdraw as your attorney and you wish to

12     represent yourself in the sentencing?

13             DEFENDANT POKE:  I wish for him to withdraw from my

14     case, but I did mention to him -- I mean, what he doing, I

15     probably can't represent myself, you know what I'm saying, but

16     I --

17             THE COURT:  No, no, no.  I don't know what you're

18     saying.  You say --

19             DEFENDANT POKE:  It was just an accusation as far as

20     representing myself, but I guess he took it as that's what I was

21     saying.  But the things that I'm asking him to do for my

22     presentencing memorandum, I'm entitled to, and he's saying --

23     he's refusing to do it, but it's my right to have my presentence

24     challenged, my PSI challenged.

25             THE COURT:  Okay.  That's right.  But that right is not

1     unbridled.  You know, there are certain ethical constraints that

2     Mr. Caver has to follow.  There's certain evidentiary restraints

3     that he has to adhere to.  And so, although it is your right to

4     challenge the presentence report -- and that's what a sentencing

5     hearing is for.

6                 DEFENDANT POKE:  Right.

7                 THE COURT:  We just don't take what the probation

8     officer says.  We scrutinize it.  We look into it.  We review it

9     to make sure that the information I have to sentence you is the

10    best and most accurate information possible.

11                For example, what's one of the things that you asked

12    him to do that he said he wouldn't do?

13                DEFENDANT POKE:  I asked him to challenge my prior

14    convictions.  He's saying he can't, and I asked him why not.

15    He's saying his duty is to the court and what's in the PSI is

16    right.  And I'm explaining to him, well, we never went over none

17    of this stuff.  How can we just go with the PSR saying what the

18    government's saying.

19                THE COURT:  Okay.  Well, tell me what's different.

20                DEFENDANT POKE:  I mean, the convictions that they're

21    using, I'm saying that -- for career, I'm saying that I'm not

22    eligible for that.

23                THE COURT:  Okay.  Well, tell me why not.

24                DEFENDANT POKE:  Because of the Buchmeier.

25                THE COURT:  The what?

1              DEFENDANT POKE:  The Buchmeier.

2              MR. CAVER:  I think he's referring to the case of

3    U.S.A. v. Buchmeier.

4              DEFENDANT POKE:  Yeah.  And --

5              THE COURT:  Okay.  Well, tell me about that case.

6              DEFENDANT POKE:  I mean --

7              THE COURT:  How is it spelled?

8              MR. KARNER:  B-u-c-h-m-e-i-e-r.

9              THE COURT:  All right.  And what does it stand for?

10             MR. KARNER:  Are you asking me, Judge?

11             THE COURT:  Do you know what it stands for?

12             MR. KARNER:  Yes, Judge.  In Buchmeier there was an

13   issue as to whether or not a person who had been convicted under

14   18 U.S.C. 922(g), a felon in possession, had been restored his

15   legal rights by a letter routinely sent out by the parole

16   division of the Illinois Department of Corrections.  That's a

17   letter that the DOC has revised over the past years, and the

18   objectionable letter was stopped being sent to parolees in 2004.

19             THE COURT:  Is that right?

20             DEFENDANT POKE:  Yeah.

21             THE COURT:  Well, how does that apply to you?

22             DEFENDANT POKE:  Because I been discharged off -- the

23   two cases they're using from back in '97 and '98, I was

24   discharged.  I was paroled on them.

25             THE COURT:  Do you care to chime in, Mr. Caver?

1          MR. CAVER:  Judge, I have started working on an

2     objection, a written list of objections, to what's included in

3     the presentence report.  That's why I went to visit Mr. Poke.

4     Further, I do intend on presenting the court with a sentencing

5     memorandum, and I've spoken with Mr. Poke about that.

6          Based on the fact that the statutory mandatory minimum

7     is what is presented in the presentence report, I went through

8     the presentence report with each of the guidelines that is

9     referenced and each of the reasons why those guidelines may or

10     in Mr. Poke's case he argues that they don't apply.  What I did

11     is I went through each of those, and I presented them to

12     Mr. Poke in a format that tracked how they were mentioned in the

13     presentence report.  So, if there were references to the

14     sentencing guidelines, I provided that to him.

15          With respect to strategy at sentencing, you know, I

16     can't speak to that, other than the fact that I don't believe

17     standing here today that we have reached -- I didn't believe

18     before coming to court today that we had reached an impasse, but

19     I believe that Mr. Poke wishes to represent himself because

20     there may be constraints on what I am permitted to do that

21     Mr. Poke would not be restrained by for professional obligations

22     and that sort of thing.

23          THE COURT:  Well, let's take this situation.  He asked

24     you to look into one of the predicate offenses to have him

25     declared an armed career criminal, and he asked you to consider

1    how Buchmeier applies to that, and he says that you refused to

2    do that.

3          MR. CAVER:  Well, Buchmeier was -- I mean, Buchmeier

4    was mentioned to me about 20 minutes ago as being one of the

5    reasons that he's challenging.

6          THE COURT:  No.  He said he -- he just told me he said

7    he told that to you before.

8          DEFENDANT POKE:  That's one of the cases.  The original

9    case I brought to his attention was United States v. Alleyne,

10   United States v. Shepherd, but these all dealing with prior

11   convictions.  And United States v. Torrez.  I mean, it's the

12   prior convictions period that I'm entitled to challenge.

13         Now, 20 minutes ago -- we never got into -- deep into

14   the PSI, you know what I'm saying.  Twenty minutes ago he asked

15   me did I still want him to represent him.  I said yeah, if you

16   going to challenge these things for me because I need them

17   challenged.  So, I asked -- so, he was like it don't work like

18   that.  He was like you got to give me your decision now before

19   we go to court.

20         And I said let me ask you a few more questions so I

21   could see how I'm going to feel about you representing me at

22   sentence.  I also asked him about the 5K1 that you said was up

23   to you, as far as the government assistance.  He told me he

24   ain't entitled to file that, either.  I asked him about the

25   mitigated factors about my illness, my mental health thing.  I

1    read up on that.  And I asked him is he entitled to file a

2    motion for that.  He told me he ain't entitled to file no motion

3    for none of that.  His duty is for the court.

4          THE COURT:  Okay.  Well, I'll confirm what Mr. Caver

5    says.  He definitely has a duty to the court to act ethically

6    and not to present frivolous arguments, not to propose frivolous

7    courses of action.  But how do you respond to those remarks?

8          DEFENDANT POKE:  Neither one of those is frivolous, is

9    it, your Honor?

10         THE COURT:  Well, I don't know.

11         DEFENDANT POKE:  I mean, they all facts that's in my

12    PSI.

13         THE COURT:  Well, but I don't know unless I see how the

14    law applies to the facts 'til I can make a decision.

15         MR. CAVER:  And, Judge, and I'm walking a very delicate

16    line here so I'm going to be very careful.  But these are all

17    the reasons why I went to the MCC to meet with Mr. Poke, to go

18    over everything and to discuss with him the presentence report

19    and how all the statutory factors apply to him, how the

20    mandatory minimum sentencing applies to him, and what we can do

21    with the sentencing memorandum and a written list of objections

22    to what's included in the presentence report.

23         Mr. Poke is correct.  We did discuss the case of

24    U.S.A. v. Alleyne from back in June, and we had a disagreement

25    based on what the holding, the limited holding in U.S.A. v.

1    Alleyne, was.  It was said that that may apply to Mr. Poke's

2    case, and after researching the issue, I did so at Mr. Poke's

3    request, even after our meeting.  I provided Mr. Poke with a

4    memorandum as to how the case of United States v. Alleyne in

5    fact does not apply in his case or at least that it wouldn't be

6    possible for me to make a good faith argument that it does apply

7    because Alleyne deals with an enhancement -- I'm sure the court

8    is familiar with it, but it's an enhancement of a fact to be

9    proven as an element of the offense to the jury beyond a

10   reasonable doubt where the government had proved a five-year

11   enhancement for possession of a firearm, but not a seven-year

12   enhancement for brandishing of the firearm.  The court at

13   sentencing on its own decided to apply the seven-year

14   brandishing enhancement, as opposed to just the five-year

15   possession enhancement, and that was the reason why the case

16   ultimately -- it was found that the defendant was only eligible

17   for the five-year enhancement because that was all that was

18   proven to the jury.

19          As U.S. Apprendi has held, there is no -- criminal

20   convictions do not have to be proven to the jury beyond a

21   reasonable doubt, and nothing in United States v. Alleyne

22   expands anything that Apprendi has held about that.  The issue

23   or the problem I think with -- the misunderstanding with the

24   case of Alleyne was that because in the presentence report it is

25   alleged that Mr. Poke is eligible for armed career criminal

1    status and career offender status, that the only way that he

2    could be eligible for that is if the government had proved

3    beyond a reasonable doubt to the jury the facts of each of the

4    criminal convictions that led to the finding by the Probation

5    Department that he was the status.

6         I disagreed with the interpretation, but I nonetheless

7    did the memo.  I looked into it and did the research on it.  I

8    didn't feel like it applied to him.  And he and I -- it was my

9    understanding that we had gotten past that disagreement, that

10   particular one.  And to go over the presentence report, what

11   I've done is I've invited Mr. Poke -- though I don't think I

12   will have time to come see him again in person before the

13   sentencing memorandum and before the written list of objections

14   is required to be filed by the court 14 days prior to the

15   sentencing date, I would be happy to go over it with him either

16   over the telephone, or, you know, if he would provide me a

17   written list after he's gone over it and cited it by line of

18   what he believes he objects to, I have offered to do that for

19   him.

20        The reason for my in-person visit, the reason why I

21   traveled for a lengthy period of time to go see him was

22   specifically to address each of these issues that Mr. Poke is

23   now raising to the court and started to raise with me about

24   20 minutes ago in a meeting in the holding area, and all of

25   these reasons are precisely the reason I went to go see him in

1    order to determine what needs to be filed, what can be filed,

2    what legitimate arguments I can make on his behalf.

3            Sorry for the long-winded response, Judge.

4            THE COURT:  Mr. Poke, as I suggested earlier, Mr. Caver

5    has an ethical duty not to present frivolous arguments.  I think

6    the problem here is that in your mind there are certain

7    objections that should be made that apply to your case, but

8    after Mr. Caver reviews them, in his expert legal opinion he

9    says they don't apply.  That's what he should do.

10           Here's the problem.  You want to represent yourself so

11   you can present these arguments that you think have merit when,

12   actually, according to a trained attorney, they don't have

13   merit.  If you represent yourself and you present these

14   arguments and they don't have merit, they're not going to be

15   sustained.  We're not going to do anything to help you with

16   those.  What I'm afraid is if you don't have the advice and

17   counsel of Mr. Caver, there are good arguments that may work in

18   your favor that won't occur to you because you don't have the

19   experience and training and education that Mr. Caver does.

20           First of all, I'm not in favor of you representing

21   yourself.  I think you're doing yourself a big disservice.  I

22   think we went through this before when we were talking about

23   jury selection.  I wanted you to come in for jury selection, and

24   you insisted that you weren't going to come in, and I was glad

25   to see that you reconsidered and that you participated in your

1      trial.  It didn't turn out the way, obviously, that you wanted
2      it to, but at least you gave yourself the best chance you could.
3              You want to say something.  Go ahead.
4              DEFENDANT POKE:  I mean, he's agreeing with the
5      government.  He's agreeing that I get 30 years without even
6      putting up a fight.  So, I can't see myself without trying, to
7      come in here and get the best time that I feel like suits my
8      crime.  You know, I mean, he professionally -- he probably been
9      doing this for a long time or whatever, but he's not in my best
10     interests.  And off the conversation and off how he deal with
11     me, I mean, basically in so many words he's saying even if it
12     was -- if my argument is legitimate, which it is because I'm
13     challenging -- all it got to do with my prior convictions.  And
14     he quoted Alleyne wrong.  Alleyne stipulates if anything raise
15     your mandatory minimum or your maximum, it has to be submitted
16     to a jury.  Anything on the indictment, it got to be submitted
17     to the jury.  The 924(e) was on the indictment.  It wasn't
18     submitted to the jury.  That's the same thing Torrez challenged,
19     United States v. Torrez.
20             THE COURT:  Okay.  He's looked at it.  He cannot
21     present an argument to me that is frivolous, that he thinks is
22     wrong.  He's prohibited by his oath as an attorney from doing
23     that.  You think it is.  I would suggest between the two of you
24     that maybe he has a better handle on what's going on here as far
25     as what's appropriate to raise in front of the court in a

1    sentencing hearing than you do.

2            But -- I mean, I just bring this up to try to dissuade

3    you from doing this.  I'll go through all the things I have to

4    go through with you.  I'll explain all the things I have to tell

5    you.  You have a constitutional right to represent yourself if

6    you want to, if you knowingly waive that right.  And I'll let

7    you do it.  I think you're hurting yourself.  I think you're

8    making a big mistake, but --

9            DEFENDANT POKE:  I mean, your Honor, I mean, can I ask

10   you a question?  Like is me challenging my prior convictions, I

11   mean, that's a crime?  I mean, after the case law that I read, I

12   was entitled to challenge my prior convictions.

13           THE COURT:  That's right.  But I don't think Alleyne

14   applies to prior convictions in determining armed career

15   criminal status in a sentencing.  I haven't looked at all the

16   cases, but that's my understanding, that what Mr. Caver is

17   telling you is exactly right.  Alleyne does not apply to prior

18   convictions that the probation officer uses to form the basis to

19   designate you as an armed career criminal.

20           DEFENDANT POKE:  It ain't say it did, and it ain't say

21   it didn't.

22           THE COURT:  I don't think it does.

23           DEFENDANT POKE:  I mean, it's just -- it's open.  And

24   we ain't going to never know did I make the right or wrong

25   decision 'til I try it and let the Supreme Court or the

```
 1      appellate court decide was my argument wrong or right.

 2              THE COURT:  But I think other courts have already ruled

 3      on that.  Other courts have already said it doesn't apply.  I

 4      think what Mr. Caver -- this isn't the first time that anybody's

 5      asked this question.  I mean, Alleyne's been around for awhile,

 6      and they've had time to look at it and examine it and scrutinize

 7      it and evaluate it, and I think what Mr. Caver is telling you is

 8      right.

 9              DEFENDANT POKE:  Alleyne just passed this year.

10              THE COURT:  Okay.  But it's been reviewed.

11              DEFENDANT POKE:  June.

12              THE COURT:  All right.  Dayton, I'm telling you I think

13      you're making a mistake, but I'm going to let you go ahead.  Let

14      me advise you of the things I've got to go through.  If after

15      all this you decide you want to exercise your right to represent

16      yourself, I'm going to let you do it.

17              First of all, you understand the charges that you have

18      been convicted of, right?

19              DEFENDANT POKE:  Yes.

20              THE COURT:  Count 1 alleges, and you've been declared

21      guilty of, an offense or an allegation that on or about July 6,

22      2011, at Rockford, in the Northern District of Illinois, Western

23      Division, Dayton Poke, defendant herein, knowingly and

24      intentionally did possess with intent to distribute a controlled

25      substance, namely, mixtures containing approximately 1.2 grams
```

1    of cocaine base in the form of crack cocaine, a Schedule II

2    controlled substance, in violation of Title 21, United States

3    Code, Section 841(a)(1).

4              Count 2 alleges, and you have been convicted of the

5    allegation, that on or about July 6th, 2011, at Rockford, in the

6    Northern District of Illinois, Western Division, Dayton Poke,

7    defendant herein, previously having been convicted of a crime

8    punishable by imprisonment for a term exceeding one year,

9    knowingly did possess a firearm, namely, a Highpoint Model JCP

10   40 S&W .40 caliber handgun with serial number X744976, which

11   possession was in and affecting commerce in that the firearm had

12   previously been transported in interstate commerce in violation

13   of Title 18, United States Code, Section 922(g)(1) and

14   924(e)(1).

15             And then Count 3 alleges, and you have been convicted

16   of the allegation, that on or about July 6th, 2011, at Rockford,

17   in the Northern District of Illinois, Western Division, Dayton

18   Poke, defendant herein, in furtherance of a drug trafficking

19   crime, namely, the offense described in Count 1 of the

20   indictment, did knowingly possess a firearm, namely, a Highpoint

21   Model JCP 40 S&W .40 caliber handgun with serial number X744976,

22   in violation of Title 18, United States Code, Section

23   924(c)(1)(A).

24             Do you understand those charges?

25             DEFENDANT POKE:  Yes.

 1              THE COURT:  They carry --

 2              MR. KARNER:  I'm sorry, Judge.  Did he answer for the

 3     record?  I didn't hear him.

 4              THE COURT:  Yes, he did.

 5              DEFENDANT POKE:  Yes.

 6              THE COURT:  They carry the possible following

 7     penalties.  Count 1 carries a possible term of imprisonment of

 8     30 years.  Count 2 carries a term of imprisonment of a minimum

 9     of 15 years and a possibility of a maximum of life.  Count 3

10     carries a 60-month term of imprisonment at a minimum and a

11     maximum term of life.  Any term of imprisonment imposed on

12     Count 3 would be consecutive to any imprisonment in Counts 1

13     and 2.  That's mandatory.  I think it's also possible that two

14     and one could be consecutive to each other.

15              MR. KARNER:  Yes.

16              THE COURT:  After any term of imprisonment, you could

17     be placed on a term of supervised release of at least

18     three years up to a maximum of life on Count 1, a term of

19     supervised release of not more than five years on Counts 2 and

20     three.  Any term of imprisonment should be run concurrently.

21     These offenses are -- you're ineligible for a sentence of

22     probation on these offenses.

23              As far as a fine, the maximum fine for Count 1 is

24     two million dollars.  The maximum fines for Counts 2 and 3 are

25     $250,000.  You would be charged a special assessment of $100 on

1    each of Counts 1, 2, and 3.

2              Do you understand all of those possible penalties?

3              DEFENDANT POKE:  Yes.  Possession of a firearm and

4    possession with drug trafficking of 1.2 grams carry a mandatory

5    30 years, basically.

6              THE COURT:  Okay.  Well, no.  Just one carries a

7    maximum of 30 years.  The other two are maximum of life.

8              DEFENDANT POKE:  And I'm saying put it all together, my

9    minimum is 30.

10             THE COURT:  Oh, I see what you're saying.

11             MR. KARNER:  He's confusing the guideline range with

12   the statutory maximums, your Honor.

13             DEFENDANT POKE:  No, I ain't confused.

14             THE COURT:  I'm not talking about guidelines.  I'm

15   talking about what the statute imposes.  The minimum on Count 2

16   is 15 years.  The minimum on Count 3 is five years.  So, the

17   minimum is 20, statutorily.

18             DEFENDANT POKE:  Minimum is 20?

19             THE COURT:  20, right.

20             DEFENDANT POKE:  They got it wrong in the PSI then.

21             THE COURT:  No.  I'm reading from the PSI.

22             DEFENDANT POKE:  That's what my lawyer told me.  My

23   minimum was 30, right?

24             THE COURT:  I'm reading from Page 38 of the presentence

25   investigation report.  I want you to understand I didn't just

1    accept it.  I looked at it, and I researched it, and I verified

2    that that's true.

3                DEFENDANT POKE:  Okay.  I'm going off what my lawyer

4    here told me 20 minutes ago.

5                MR. CAVER:  Well, Judge, under Part D, sentencing

6    options, Section 144, on Page 38, the maximum is 30 years.

7                THE COURT:  Well, the maximum on Count 1 is 30.  The

8    maximum on Counts 2 and 3 are each life.  The mandatory minimum

9    is 15 years on Count 2 and five years on Count 3.  So, what

10   we're talking about here as far as imprisonment on all three is

11   a minimum of 20 and a maximum of life.

12               MR. CAVER:  Twenty.

13               THE COURT:  Right.

14               MR. CAVER:  Yes, Judge.

15               THE COURT:  All right.  Do you understand all of those

16   possible penalties?

17               DEFENDANT POKE:  Yeah.

18               THE COURT:  All right.  How old are you?

19               DEFENDANT POKE:  34.

20               THE COURT:  And how far have you gone in school?

21               DEFENDANT POKE:  Ninth grade.

22               THE COURT:  Do you have any difficulty reading or

23   understanding English?

24               DEFENDANT POKE:  No.

25               THE COURT:  What kind of jobs have you had in the past?

1        DEFENDANT POKE:  None.

2        THE COURT:  None to speak of?

3        DEFENDANT POKE:  (Shaking head.)

4        THE COURT:  Have you ever been examined for a mental

5    condition or impairment?

6        DEFENDANT POKE:  Have I -- I mean, yeah, I have, but my

7    lawyer said that don't qualify as an evaluation.

8        THE COURT:  Okay.  What I just want to know is if

9    you're competent to make the decisions that you're going to make

10   here and that you're thinking with a clear head, that you're

11   doing so knowing and voluntarily.  And so, I don't want you to

12   make this decision if you're not thinking straight, if your mind

13   isn't working, if you're suffering under some psychological

14   disability, and I just want to establish that for now.  Do you

15   have any psychological problems?

16       DEFENDANT POKE:  Well, I mean, do you consider post

17   traumatic stress personality disorder?

18       THE COURT:  Right.  Those are the kinds of things.

19       DEFENDANT POKE:  I mean, I don't know.  I feel like I

20   can make good judgments, I guess.

21       THE COURT:  Okay.  Well, you're receiving some

22   medication for anxiety.  That was prescribed by a doctor,

23   obviously.

24       DEFENDANT POKE:  Yeah.

25       THE COURT:  And what prompted that medication?  Have

1    you been diagnosed with some mental disease or some mental

2    disorder?

3             DEFENDANT POKE:  I mean, if that's a mental disease or

4    disorder that I just named, I asked my lawyer before we came out

5    here.  He said no.  So, I mean -- I sound competent, don't I?

6             THE COURT:  Pardon me?  I didn't hear what you said.

7             DEFENDANT POKE:  No.  I was asking my lawyer.  I sound

8    competent, don't I?

9             THE COURT:  Okay.  Well, and that may be, but I have to

10   verify it for my own self, and I want to make sure it's on the

11   record so that when somebody reads this transcript, they also

12   agree that you're mentally competent.

13            In paragraph 127 of the presentence investigation

14   report, it says you were diagnosed with post traumatic stress

15   disorder.  What stress was that?  What traumatic event was that?

16            DEFENDANT POKE:  In 2010 I was shot close range with a

17   high powered rifle.

18            THE COURT:  And antisocial personality disorder.  It

19   says you put in requests at the MCC to see a counselor because

20   you're just not feeling right and you have anxiety attacks and

21   you're out of it.  What's all that about?

22            DEFENDANT POKE:  I mean, they said I'm normal.  So, I

23   guess -- they ain't want to talk.  So, I mean -- but as you see

24   my history, this been going on my whole life.  So, if everybody

25   telling me that I'm competent, I'm competent.  I mean, this go

1    back from when?  Age 13.

2          So, if I ain't get help then for it, ain't nobody seek

3    to get me help then, I mean, I'm 34.  So, I feel like every

4    decision that I been making on my own, which I been out on my

5    own, as you see, I mean, I got to be competent or something,

6    right?  No matter what they say on there.  I mean --

7          THE COURT:  Have you ever been examined to determine

8    whether you're competent to stand trial?

9          DEFENDANT POKE:  No.

10          THE COURT:  Sinnissippi Counseling Center says you

11    suffer from post traumatic stress disorder and antisocial

12    personality disorder.  Tell me about what prompted that

13    examination.  Why did you go to Sinnissippi Counseling Center

14    back in 2010?

15          DEFENDANT POKE:  I mean, because --

16          THE COURT:  I'm sorry.  This was March 21, 2012.

17          DEFENDANT POKE:  Wait.  Yeah.  Because I mean, I just

18    went through a lot of trauma.

19          THE COURT:  Because you were shot?

20          DEFENDANT POKE:  Yeah.  I done died and came back.  I

21    went from a coma straight to jail, straight -- so, I mean,

22    without talking to any -- I thought I was going to go talk to

23    somebody to see if I'm still thinking normal or thinking right

24    or somebody tell me that I'm straight, I'm just supposed to get

25    up there, you know what I'm saying?  Because so far everything I

1    feel like I'm doing is right.

2              THE COURT:  Do you have children?

3              DEFENDANT POKE:  Yeah, I got four.

4              THE COURT:  Four.

5              DEFENDANT POKE:  Yeah.

6              THE COURT:  Have any of them ever been taken away by

7    the Department of Children and Family Services?

8              DEFENDANT POKE:  No, sir.

9              THE COURT:  Do you do anything to support your

10   children?

11             DEFENDANT POKE:  No.  I can't.  Not up in here.  You

12   say support them?

13             THE COURT:  Right.

14             DEFENDANT POKE:  Yeah.  I can't.  I mean, I'm in jail.

15             THE COURT:  Do you take care of them?  I mean, when you

16   were you out of jail, did you take care of them?

17             DEFENDANT POKE:  I mean, yeah.  Yeah.

18             THE COURT:  How did you take care of them?

19             DEFENDANT POKE:  I mean, man, you know, living on the

20   streets, how I'm raised, same thing I been doing for the last

21   what?  From 13 -- from 13 to 34.  I mean --

22             THE COURT:  All right.  I think you're competent to

23   make --

24             DEFENDANT POKE:  Yeah.

25             THE COURT:  -- this decision.

1          DEFENDANT POKE:  Yeah.

2          THE COURT:  Let me tell you some things about

3     representing yourself.  Presenting a defense is not a simple

4     matter of telling one's story, but requires adherence to various

5     technical rules governing the conduct of a sentencing hearing.

6     A lawyer has substantial experience and training in trial

7     procedure.  And the prosecution will be represented by an

8     experienced attorney.  That's Mr. Karner.

9          Mr. Karner has done this many times.  He knows the ins

10    and outs of sentencing.  He's sentenced probably hundreds of

11    people -- or not sentenced them, but he's represented the

12    prosecution in sentencing hundreds of people, maybe thousands.

13    He's been around a long time, and he's seen just about every

14    kind of sentencing scenario that is out there.  He works hard.

15    He cares about his cases.  He's going to do a good job.  He

16    vigorously represents his client, which is the United States.

17    And so, you've got a formidable opponent there.

18          You have Mr. Caver to represent you.  Mr. Caver cares

19    about his cases.  He's been trained as a lawyer.  He's had

20    experiences in these kinds of situations.  And what I'm

21    suggesting to you is a person like yourself, who's unfamiliar

22    with legal procedures, may allow the prosecutor an advantage by

23    failing to make objections to inadmissible evidence, and you may

24    make tactical decisions that produce unintended consequences.

25          If you proceed by yourself without an attorney, you

1    will not be allowed to complain on appeal about the competency

2    of your representation.  Your effectiveness of your defense may

3    well be diminished as your dual role as an attorney and accused.

4    In other words, when you represent yourself, you have a

5    tendency -- everybody has a tendency to lose objectivity.  They

6    don't look at this in a clinical way, but they look at it in a

7    personal way, and sometimes their personal likes and dislikes

8    and wants and desires interfere with a cold, sober, objective

9    review of the evidence and your position in the case.

10          You will receive no special consideration from the

11   court because you represent yourself.  And I want to suggest to

12   you that a lawyer can render important assistance by determining

13   the existence of objections to the PSI and arguments that you

14   could make to mitigate your sentence.

15          I take it since you only went to ninth grade, you never

16   studied law.  You haven't taken any law courses.  Or have you?

17          DEFENDANT POKE:  No.

18          THE COURT:  All right.  But you tell me you've been

19   reading some cases on this.

20          DEFENDANT POKE:  Yeah.

21          THE COURT:  What kind of cases have you been reading?

22          DEFENDANT POKE:  I've read a couple of them.  But with

23   all this mental illness stuff, shouldn't I get evaluated before

24   you all decide should I stand trial -- I mean, represent myself?

25   I mean --

1          THE COURT:  I don't think so.  I don't see any reason

2     why you should be evaluated.

3          DEFENDANT POKE:  I was just checking.

4          THE COURT:  Okay.  If there was, I'd order an

5     evaluation, but you seem like an intelligent, lucid, articulate

6     person to me.

7          DEFENDANT POKE:  Thanks.

8          THE COURT:  Have you ever represented yourself before

9     in a criminal case?

10          DEFENDANT POKE:  Nope.

11          THE COURT:  You know that you have a right to be

12     represented by an attorney, and if you cannot afford an

13     attorney, I will appoint an attorney to represent you at no cost

14     to you.  Do you understand that?

15          DEFENDANT POKE:  Yeah.  Other than Mr. Caver?

16          THE COURT:  Pardon me?

17          DEFENDANT POKE:  Other than Mr. Caver?  You said you'll

18     appoint me one, right?

19          THE COURT:  Right.  Well, but that would -- I would

20     appoint another attorney -- you know, the question of whether

21     you're going to have another attorney, you want another attorney

22     to represent you besides Mr. Caver, is a totally -- not totally

23     different, but it's a lot different than the inquiry I'm doing

24     now.  I'm proceeding on the assumption that you wish to

25     represent yourself.  Are you telling me that you'd rather -- you

1    want another attorney to represent you besides Mr. Caver?

2            DEFENDANT POKE:  Yeah, because I never told Mr. Caver

3    that.  He took it upon his own to put that in his motion.

4            THE COURT:  All right.  Well, we're going to have to

5    start all over then.

6            DEFENDANT POKE:  Yeah.

7            THE COURT:  But it may be that after I review this

8    situation, I'm not going to appoint another attorney to

9    represent you.  There are certain legal requirements and

10   criteria that we have to go through in order for me to determine

11   whether Mr. Caver should be removed and whether another attorney

12   should be appointed in this case.

13           But I'm here to do it.  I'm ready to do my job.  If you

14   want me to have Mr. Caver removed and appoint another attorney,

15   then we'll start all over, and I'll tell you the things that I

16   need to tell you, and I'll make the calls that I need to make in

17   order to determine whether that's appropriate.

18           MR. KARNER:  Well, Judge, if that's going to be his

19   motion, I'd ask that he be required to put that into writing and

20   allow us an opportunity to respond because our position is going

21   to be different on the issue of another lawyer representing

22   Mr. Poke, as opposed --

23           THE COURT:  I understand you don't oppose him

24   representing himself.

25           MR. KARNER:  Not if there's a knowing and intelligent

1    waiver.

2         THE COURT:  Right.  But you do oppose another attorney

3    being appointed to represent him in place of Mr. Caver.

4         MR. KARNER:  Based on the facts of record now.

5         THE COURT:  All right.

6         Okay.  Dayton, it's your call.  I've been proceeding

7    under the assumption that you want to represent yourself.  If

8    that's not true, then let's stop where we are right now, and

9    you'll have to put your motion in writing that you want another

10   attorney to represent you in place of Mr. Caver, the government

11   will respond, and I'll make a different inquiry.

12        It may be that I won't grant the motion and that I

13   won't allow another attorney to replace Mr. Caver.  There are

14   certain criteria that I have to consider, certain factors that I

15   have to take into account in order to make that decision.  But

16   whether you want me to head down that road is up to you.  All

17   you have to do is tell me.  Do you want to step down and talk to

18   Mr. Caver for a moment?

19        MR. CAVER:  Judge --

20        DEFENDANT POKE:  We'll put in the motion because, I

21   mean, the whole point of us being here is I just want them

22   things challenged.  If I can't -- if he ain't going to challenge

23   them, then somebody got to challenge them.

24        THE COURT:  Okay.  Well, what I'm suggesting to you is

25   that -- and it may be that I'll appoint another attorney to

1    represent you in place of Mr. Caver.  I can't say I won't.

2    That's yet to be determined.  But you may get another attorney

3    that's looking at these things the same way that Mr. Caver looks

4    at them, and we're not going to be any further ahead than we are

5    right now.

6           DEFENDANT POKE:  All their duty is to the court.  Some

7    of them might work a little harder than the other ones.

8           THE COURT:  I don't think it's a matter of working

9    hard.  Mr. Caver works very hard.  But why don't you -- so, what

10    you're telling me is you want to withdraw your request to

11    represent yourself, and you want to ask leave to file a motion

12    to have an attorney appointed to represent you in place of

13    Mr. Caver.  Is that where we're at?

14           DEFENDANT POKE:  Yeah.

15           THE COURT:  All right.  How long will it take you to

16    file that motion?

17           MR. CAVER:  Judge, I can probably have it on file by

18    tomorrow.

19           THE COURT:  All right.  How long would it take you to

20    respond?

21           MR. KARNER:  Seven days, Judge.

22           THE COURT:  All right.  I'll set this matter for

23    hearing then August 19th at 2:30.

24           MR. CAVER:  What time, Judge?

25           THE COURT:  2:30.  Does that work for you?

 1              MR. CAVER:  Does the court have any availability in the

 2     morning?

 3              THE COURT:  Sure.  What about 10:30?

 4              MR. CAVER:  That would be preferable, Judge.

 5              DEFENDANT POKE:  I mean, your Honor, is the 5K1

 6     motion -- is that frivolous if I file that?  Is that frivolous?

 7              THE COURT:  Well, when you say 5K1 motion, what --

 8              DEFENDANT POKE:  I mean, for the -- I mean, for the

 9     government assistance.  Say if he -- in my situation is it, you

10     know what I'm saying, like the mitigating factors?

11              THE COURT:  A 5K1.1 motion is a motion that's filed by

12     the government.

13              DEFENDANT POKE:  Right.

14              THE COURT:  You cannot file a 5K1.1 motion.  Now, if

15     you're asking me if cooperation with the government is something

16     that I can take into consideration as mitigation --

17              DEFENDANT POKE:  Right.

18              THE COURT:  Yes, I can do that.

19              DEFENDANT POKE:  Right.  Because I misunderstood what

20     you told me last time.  You said a motion would have to be

21     filed.

22              THE COURT:  No, no.  What I'm telling you now is you

23     have to file a motion to have another attorney appointed in the

24     place of Mr. Caver.

25              DEFENDANT POKE:  No, I understand that.  I was asking

1    some questions that I wanted to know myself about the --

2              MR. CAVER:  May I -- I think I can just help clarify

3    maybe a miscommunication.  I think what Mr. Poke is saying is

4    previously his recollection was that your Honor had -- what he

5    heard was that your Honor had said that he should file a 5K1.1

6    motion in order to get consideration from the court.

7              THE COURT:  Okay.  I don't recall making that

8    statement.  I don't think I would have.  Maybe I made another

9    statement that you misunderstood.  But it's clear to me and it's

10   always been clear to me that a 5K1.1 motion is made by the

11   government, not by a defendant.

12             DEFENDANT POKE:  All right.

13             MR. KARNER:  But, of course -- and, Judge, this might

14   help the defendant's understanding.  His lawyer can, if there's

15   a legal basis for doing so, file a motion for downward variance.

16             THE COURT:  Right.  For mitigation --

17             MR. KARNER:  Right.

18             THE COURT:  -- because he cooperated with the

19   government, and I think I made that clear.

20             DEFENDANT POKE:  Yeah.  But you had mentioned the 5K1.

21   That's why I was thinking, and I asked him about it.

22             THE COURT:  A 5K1.1 motion is filed by the government,

23   not by a defendant.

24             DEFENDANT POKE:  And the mitigating factor of the --

25   no.  I mean, I got to ask him, though, because if somebody going

1   to lie to me, I might as well ask the judge why I'm here because

2   I want to know.

3              THE COURT:  What did you say?  If somebody would lie to

4   you?

5              DEFENDANT POKE:  No.  I mean, sometimes things get told

6   different from when we in the room until when we in the

7   courtroom.  So, I felt like the things that I want to know, I

8   was going to ask you --

9              THE COURT:  All right.

10             DEFENDANT POKE:  -- to get the right -- the correct

11  understanding.

12             THE COURT:  Okay.  If you want another attorney, file

13  your motion, and I'll look at it a week from Monday.

14             MR. CAVER:  Judge, may I just ask the court one final

15  question?  We are still set for sentencing on the 29th at 2:30?

16             THE COURT:  Right.

17             MR. CAVER:  Shall I continue my preparation as if I'm

18  going to proceed on that sentencing hearing?  I don't want to be

19  in a position where we have to make the motion to continue the

20  sentencing hearing, for instance.

21             THE COURT:  My preference would be to have Mr. Caver

22  stop working on the case, and we'll have to give you another

23  date for sentencing.  Is that all right with you?

24             DEFENDANT POKE:  Yeah.  Yeah.  I just want to get it --

25  make sure it's right.

1          THE COURT:  All right.

2          MR. CAVER:  Because I have already prepared some, but I

3   will not continue.

4          THE COURT:  Okay.  Well, I don't want you to spend a

5   lot of time and work on this if you're going to be -- if

6   somebody else is going to be representing Mr. Poke.  But by the

7   same token, I may not grant the motion, and you will be on the

8   case, but I understand that you need some time to work on it.

9   So, we'll just anticipate giving Mr. Poke another sentencing

10   date.

11          MR. CAVER:  I appreciate it, Judge.

12          THE COURT:  Fair enough, Mr. Karner?

13          MR. KARNER:  Yes, sir.

14          THE COURT:  Okay.

15       (Which were all the proceedings had in the above-entitled

16          cause on the day and date aforesaid.)

17       I certify that the foregoing is a correct transcript from

18   the record of proceedings in the above-entitled matter.

19

20

_____
21   Mary T. Lindbloom
     Official Court Reporter
22

23

24

25