```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            WESTERN DIVISION

 3      UNITED STATES OF AMERICA,     )     Docket No. 11 CR 50062
                                      )
 4                    Plaintiff,      )     Rockford, Illinois
                                      )     Thursday, March 13, 2014
 5             v.                     )     9:30 o'clock a.m.
                                      )
 6      DAYTON POKE,                  )
                                      )
 7                    Defendant.      )

 8                        TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE FREDERICK J. KAPALA
 9
        APPEARANCES:
10
        For the Government:          HON. ZACHARY T. FARDON
11                                   United States Attorney
                                     (327 S. Church Street,
12                                    Rockford, IL  61101) by
                                     MR. MARK T. KARNER
13                                   Assistant U.S. Attorney

14      For the Defendant:           LAW OFFICE OF TINA LONG RIPPY
                                     (216 N. Court Street,
15                                    Rockford, IL  61103) by
                                     MS. TINA LONG RIPPY
16
        Also Present:                MS. JENNIFER TABORSKI
17                                   Probation Office

18      Court Reporter:             Mary T. Lindbloom
                                     327 S. Church Street
19                                   Rockford, Illinois  61101
                                     (779) 772-8309
20

21

22

23

24

25
```

1                THE CLERK:  11 CR 50062, U.S.A. v. Dayton Poke.

2                MR. KARNER:  Good morning, your Honor.  Mark Karner on

3       behalf of the United States.

4                MS. RIPPY:  Good morning, your Honor.  Tina Rippy on

5       behalf of Mr. Poke, who is present in custody today.

6                THE COURT:  Good morning.

7                This case comes before the court in consequence of a

8       jury finding of guilty on offenses of possession with intent to

9       deliver cocaine base, felon in possession of a firearm, and

10      possession of a firearm in furtherance of a drug trafficking

11      crime.  The presentence report shows that the defendant's taking

12      medications.  They're listed in paragraphs 116 and 117.

13      Mr. Poke, have you taken those medications today?

14               DEFENDANT POKE:  No, sir.

15               THE COURT:  None of those?

16               DEFENDANT POKE:  No.

17               THE COURT:  Have you consumed any other -- any drugs or

18      alcohol in the past 24 hours?

19               DEFENDANT POKE:  No, sir.

20               THE COURT:  And none of those medications are for

21      mental health issues, are they?

22               DEFENDANT POKE:  No, sir.

23               THE COURT:  I've received two letters from the

24      defendant.  I'm not going to include these as part of the

25      sentencing materials I presently have because the defendant was

1    represented by counsel, and I believe it would be inappropriate

2    for him to file documents outside of his attorney's

3    representation.

4           In addition, Mr. Poke, I don't know if it's your

5    intention to make these letters public.  Because of the things

6    that are in it, you may not want to make them part of the public

7    record.

8           DEFENDANT POKE:  No.  No, sir.  They was just for you.

9           THE COURT:  All right.  If you would like them to -- if

10   you would like them to be part of the public record, you have a

11   right to do so, but what I'll do is I'll give the letters back

12   to you, and if you want to read them during your statement of

13   allocution, then you can go ahead and do it there.

14          DEFENDANT POKE:  I already wrote something up.

15          THE COURT:  All right.

16          DEFENDANT POKE:  I got something wrote.  I mean, if you

17   want to give them back, I'll take them back.

18          THE COURT:  I'll give those back to you.  You can

19   reference them.

20          DEFENDANT POKE:  Okay.

21          THE COURT:  You can add them.  You can include them in

22   your statement of allocution.

23          DEFENDANT POKE:  Okay.

24          THE COURT:  But I just want to make sure that you know

25   that you can make them part of the record in this case if you

1    want to.

2            All right.  I have before me the following materials to

3    consider.  The parties' -- I'm sorry -- the presentence

4    investigation report prepared by the probation office.  The

5    defendant has a sentencing memorandum and a supplemental

6    sentencing memorandum, and the government has responded to both.

7    Also I have a report dated October 23rd, 2013, from the

8    Metropolitan Correction Center.

9            Do the parties agree that all those materials are

10   appropriate for me to use for purposes of sentencing?

11           MR. KARNER:  Yes.

12           MS. RIPPY:  Judge, I haven't seen the October -- you

13   referenced an October report.  I'm not aware of that.

14           THE COURT:  You've received a copy, haven't you,

15   Mr. Karner?

16           MR. KARNER:  Yes, I did.

17           MS. RIPPY:  Could I just --

18           THE COURT:  I'll let you look, and if you want a copy,

19   I'll make a copy for you.

20           MS. RIPPY:  Thank you.

21       (Brief pause.)

22           MS. RIPPY:  If I could have a copy, your Honor, for the

23   record.

24           MR. KARNER:  As long as copies are being made, can I

25   have a copy?

1              THE COURT:  Pardon?

2              MR. KARNER:  Can I have a copy, too?

3              THE COURT:  Tim, could we get two, please?

4              All right.  Do the parties agree that all those

5    materials are appropriate for me to use for purposes of

6    sentencing?

7              MR. KARNER:  Yes.

8              MS. RIPPY:  Yes, your Honor.

9              THE COURT:  Are there any other written materials you

10   wish me to consider at the present time?

11             MR. KARNER:  Not from the government.

12             MS. RIPPY:  Not from the defendant.

13             THE COURT:  Mr. Poke, have you read and reviewed those

14   materials?

15             DEFENDANT POKE:  Excuse me?

16             THE COURT:  Have you read and reviewed those materials

17   that I'm talking about?

18             DEFENDANT POKE:  Yeah.

19             THE COURT:  All right.  And you've discussed them with

20   Attorney Rippy?

21             DEFENDANT POKE:  No, I haven't.

22             THE COURT:  Okay.  You should discuss those with her.

23             DEFENDANT POKE:  Okay.

24             THE COURT:  I'll take a break, and you can sit down at

25   the counsel table, and you can --

1          MS. RIPPY:  I'm sorry, your Honor.  What materials are

2     you referring to?

3          THE COURT:  We're talking about the sentencing

4     memorandums, the responses, and the presentence investigation

5     report and the --

6          DEFENDANT POKE:  Oh, yeah, yeah.  I reviewed that.  I

7     thought you was talking about some additional stuff that I'll be

8     speaking about during the sentencing.

9          THE COURT:  All right.  Let's step back.  Are there any

10    other written materials you wish me to consider at the present

11    time?

12         MS. RIPPY:  If I may just have a moment, your Honor.

13         THE COURT:  Sure.

14      (Brief pause.)

15         MS. RIPPY:  Mr. Poke is indicating that he would like

16    your Honor to consider the patient medication information for

17    the gabapentin that he takes on a daily basis.  The gabapentin

18    is for nerve pain.  It relates to the injuries he sustained in a

19    gunshot wound.

20         THE COURT:  Well, he's had several, but --

21         MS. RIPPY:  Well, he's had several gunshot wounds,

22    correct, but the one that he's taking the gabapentin for, it

23    does have several side effects, and Mr. Poke is indicating that

24    he would like your Honor to review the patient medication

25    information to consider in your sentencing.

```
 1              MR. KARNER:  I don't object to that.

 2              THE COURT:  May I have it?  Why don't we have copies

 3     made then.  Susan, can you make a copy for me, for the

 4     government, and also for the probation department?

 5         (Brief pause.)

 6              THE COURT:  There is a forfeiture allegation in the

 7     indictment.  Does the defense have any objection to forfeiting

 8     any right, title, and interest to the firearm and ammunition?

 9              MS. RIPPY:  No, your Honor.

10              Your Honor, Mr. Poke is indicating, as well, that in

11     reference to an issue that he wishes to bring to the court's

12     attention, which is whether or not his -- in reference to the

13     1998 robbery conviction.  And perhaps I better let him explain

14     exactly what it is that he wishes.

15              DEFENDANT POKE:  I wanted to challenge my robbery

16     conviction under the Buchmeier case.  As far as my rights was

17     being restored, it can't be used for ACCA purposes.  But the

18     government going to argue that I need the actual discharge

19     paper, but in the Jones case, the DOC technician testified that

20     there's only one letter that get generated out, and they don't

21     save copies, and they don't put it in a personal file.  So,

22     there would be no possible way that I would ever be able to

23     contain that letter, you know what I'm saying.

24              So, it says under a preponderance of the evidence I

25     have to prove another way that I received that letter is because
```

1      I discharged from -- I completed parole in Logan Correctional

2      Center, and for them to release me I would had to receive this

3      letter because the parole board got to send the same letter that

4      Buchmeier received for the Department of Correction to release

5      me on that date.

6              THE COURT:  Are you talking about in connection with

7      your designation as an armed career criminal?

8              DEFENDANT POKE:  Yeah.

9              THE COURT:  Is that what this is about?

10             DEFENDANT POKE:  Yes.

11             MR. KARNER:  Judge, I object to him bringing this up

12     now.  We didn't have any prior notice of this.  If we had prior

13     notice, because I do have experience addressing the Buchmeier

14     issue -- and, by the way, what he said is wrong -- we could have

15     contacted the Department of Corrections to see if there is any

16     type of issue concerning the restoration of rights letter that's

17     at the heart of the Buchmeier decision.

18             DEFENDANT POKE:  I've been asking my lawyer for several

19     months, you know, and I apologize, but I've been notifying her

20     for like since she got on the case that this was one of the main

21     charges that I wanted to challenge, ACC, at my sentencing, you

22     know.  So, I notice that she ain't put it in my sentencing

23     memorandum and --

24             THE COURT:  How would it -- I'm not familiar with the

25     Buchmeier case.  What does it say?

1          MR. KARNER:  In Buchmeier, Judge, one of the predicate

2    convictions -- in one of the predicate convictions there was an

3    issue, and I don't remember the complete facts, but there could

4    be an issue if the defendant when he released on mandatory

5    supervised release received a letter stating that he was fully

6    restored to all the rights, constitutional rights, he had prior

7    to his incarceration, and that may -- depending on the wording

8    of the letter, that may affect the validity of one of the

9    predicate offenses that makes him qualified for either being an

10   armed career criminal or a career offender.

11          THE COURT:  How would it affect it?

12          MR. KARNER:  Giving him an issue on whether or not he

13   was allowed to possess a weapon by a felon.

14          DEFENDANT POKE:  The letter was misleading at the time

15   that they wrote it -- I mean, that they was generating it out.

16   So, they had to change it.  So, everybody that received this

17   letter before 2004 that discharged off parole, that charge can't

18   be used as ACC purposes, and I discharged off parole.

19          THE COURT:  Wait.  Well, shouldn't this have been

20   brought up in the trial of this case?

21          DEFENDANT POKE:  No.

22          MR. KARNER:  It should have been brought up, yeah.  It

23   should have been brought up before now.

24          DEFENDANT POKE:  No, it's a sentencing issue.  It ain't

25   a trial issue.  It's using one of my priors to arm career me for

```
 1    the purposes of that.  That's what the whole Buchmeier case is
 2    about.  But I discharged off parole.  The government say I would
 3    have to generate the letter personally, but there's no way that
 4    anybody that discharge off parole can bring this letter forth
 5    because it's only one made.
 6              THE COURT:  But what you're telling me is that --
 7              DEFENDANT POKE:  I don't got the letter.
 8              THE COURT:  -- if the letter was generated, then you
 9    would have a right to possess --
10              DEFENDANT POKE:  No.
11              THE COURT:  -- a gun as a felon?
12              DEFENDANT POKE:  No.  If I had the letter, then the
13    government would say that that's the only way I can challenge my
14    prior conviction, but right now I don't have the letter.
15    There's no way that I could get the letter, you know what I'm
16    saying, under no circumstances.
17              THE COURT:  What would the letter say?
18              DEFENDANT POKE:  The letter would say that all my
19    rights was restored, and under the Buchmeier -- like he said,
20    under the language it was misleading felons to think that when
21    all your rights is restored that it meant the right to purchase
22    a firearm or possess one.  So, by the letter being misleading to
23    felonies (sic), then they send a letter -- I mean, then that
24    conviction can't be used as ACC purposes if I discharge off
25    parole, and I fit that category because I discharged off parole
```

1      before they changed the wording of the letter.

2              MR. KARNER:  Judge, first of all, we need to know if

3      Ms. Rippy is going to adopt that argument, and, if so, Judge, I

4      can go down and pull a copy of the Buchmeier decision.

5              THE COURT:  Well, I guess what we need is the letter,

6      though, don't we?

7              MR. KARNER:  Not necessarily, Judge.  With my

8      experience in dealing with the Department of Corrections --

9      first of all, the defendant should have maintained a copy of

10     that letter.  It would be his burden to prove the contents of

11     the letter.  There were several different form letters sent out

12     by the Department of Corrections.  Some of them don't even

13     implicate the holding -- aren't implicated by the holding in

14     Buchmeier.

15             DEFENDANT POKE:  I notified my lawyer.

16             THE COURT:  But you're saying that if there was a form

17     of this letter that said what Mr. Poke says it said, that that

18     would -- I don't understand how it helps him.

19             MR. KARNER:  It may affect our ability to use one of

20     the predicate offenses, robbery.

21             THE COURT:  For a career offender?

22             MR. KARNER:  Yes.  Well, for armed career criminal,

23     too.  That would only apply, though, to the unlawful possession

24     of a weapon by a felon count.  It wouldn't affect Count 1, the

25     possess with intent to distribute cocaine base, and it wouldn't

1    affect the 924(c) count.  So, it wouldn't affect the career

2    offender provisions.  It could affect in theory -- and we're a

3    long way from that because as the presentence report shows,

4    there are more than the requisite number of three predicate

5    felonies for armed career criminal.

6         THE COURT:  Yes, but the other ones are the aggravated

7    battery, and then we have to go into the categorical approach.

8         MR. KARNER:  That's right.

9         MS. RIPPY:  Your Honor, if I may.

10        THE COURT:  Yes.

11        MS. RIPPY:  I did extensive research on this issue on

12   behalf of Mr. Poke, and we went back and forth on this on a

13   number of occasions.  I have a copy of the Buchmeier case, and I

14   have a copy of several other cases that discuss this issue.  It

15   is Mr. Poke's burden to produce the letter, and he has not done

16   so, and he cannot do so.  And the deciding factor for me was

17   that on all of Mr. Poke's convictions, he did not successfully

18   complete his parole.  He was always sent back.

19        DEFENDANT POKE:  It don't stipulate completed

20   successfully or not, though, your Honor.

21        THE COURT:  Okay.  Well, wait a minute.

22        DEFENDANT POKE:  I'm sorry.

23        THE COURT:  Let's everybody take their turn.

24        MS. RIPPY:  It's my understanding that the letter would

25   only issue if Mr. Poke successfully completed his parole the

1    first time around.

2            MR. KARNER:  And that's absolutely correct.

3            MS. RIPPY:  And, therefore, I didn't bring the issue

4    before the court because of that point, and I explained this to

5    Mr. Poke.

6            DEFENDANT POKE:  But I also read this -- I also read

7    Buchmeier myself.  It don't state that.  I mean, if she showed

8    me some proof that this stuff -- that that's been worded what

9    she said, then we don't got to go on.  But if you ain't showing

10   me no proof after I read something of my understanding, then --

11           THE COURT:  Is there language in a case --

12           DEFENDANT POKE:  Yeah.  I mean, you know.

13           THE COURT:  Is there language in a case you can share

14   with Mr. Poke?

15           MS. RIPPY:  I'm going to have to find it.

16           THE COURT:  Why don't you take a moment and take a

17   look.

18           DEFENDANT POKE:  I mean, as long as I completed parole

19   either in jail or out of jail, I receive the letter because the

20   letter is just letting me know that I'm discharged off parole

21   and all my rights is restored.  If they don't generate the

22   letter and let me know what rights is restored to me, then

23   what's the purpose of discharging me off parole?

24           And for the government to ask me to produce this

25   letter, I think it's very manipulated, a miscarriage of justice,

1    and also a dishonor to the law, Constitution, and myself, as

2    well, knowing that the letter can't never be produced.

3          MS. RIPPY:  Well, I'm sorry, your Honor.  I just can't

4    find the citation at the present time.  I do know that in my

5    research, that did come up, and I explained that to Mr. Poke,

6    but I can't find it in my paperwork.

7          DEFENDANT POKE:  Your Honor, she sent me a copy of

8    everything that she researched, and I read over it constantly

9    that it don't quote that.  You know what I'm saying?  I mean,

10   I'm sorry.  We can't force it.  We can't just force to change

11   the law because we feel like you want it to apply to me.

12         THE COURT:  But you agree on all of the predicate

13   offenses, you did not successfully complete parole.  You were

14   returned back to the Department of Corrections for violations.

15         DEFENDANT POKE:  Yeah.

16         THE COURT:  You agree with that.

17         DEFENDANT POKE:  Yeah.  Yeah.  I completed parole

18   successfully in jail.  It don't stipulate if I was to violate or

19   not.  I just had to complete parole, and I completed parole in

20   the Department of Corrections, and that makes it more better

21   because, like I explained to her, she could have just called

22   Logan Correctional Center, and they would have faxed her that

23   same discharge letter because the parole board -- for me to get

24   released, the parole board would have to give the Department of

25   Corrections this letter to let them know to release me on this

1    discharge date that I have right here in front of me.  Other

2    than that, I would have never got released that day.  And they

3    also sent me a letter the day before discharging me off parole,

4    letting me know all my rights is restored, and I no longer have

5    to serve parole.

6         Now, I'm arguing that it's the same letter that

7    Buchmeier received because it never said it was multiple letters

8    sent out.  They changed the parole letter in 2004 after the

9    Buchmeier ruling to correct it from being misleading, but people

10   was still finding, as they say, mousetrap loopholes in it, and

11   they had to change it again in 2009.  But so -- not just after

12   the Buchmeier.  The letter still had complications with it to

13   where they had to keep changing it.

14        I discharged off parole 2001, you know what I'm saying.

15   So, I mean, it's clearly that the Buchmeier case applied to me,

16   you know.  I mean, for them to ask me to produce the letter, the

17   Department of Corrections already gave testimony on one of the

18   case citings that it's only one letter that gets generated out,

19   and they don't have no means to save no copy.

20        And at the time, if I knew this letter was any value to

21   my life in the future, yeah, of course I'd be able to produce it

22   right now, but all I got is the facts that I discharged off

23   parole successfully.

24        THE COURT:  All right.  But in every of these predicate

25   offenses, you say you completed parole in prison?

 1            DEFENDANT POKE:  Yeah.  I mean --

 2            THE COURT:  So, you were released on parole and then

 3     brought back because of a violation, and then you completed

 4     parole in prison.

 5            DEFENDANT POKE:  Yeah.

 6            THE COURT:  Is that where it is?

 7            DEFENDANT POKE:  Yeah.

 8            THE COURT:  Well, Ms. Rippy tells me that there's cases

 9     that say in that situation Buchmeier doesn't operate the way you

10     say it operates.

11            DEFENDANT POKE:  I mean, Ms. Rippy say a lot of things

12     that ain't been true in the past, but she got the case laws

13     right here.

14            THE COURT:  All right.  But you just want to see the

15     case law.

16            DEFENDANT POKE:  I mean, we got to have proof.  We just

17     can't -- we can't go off the law of Ms. Rippy.  Come on, your

18     Honor.  I mean, I just want to be fair here, man.  That's all I

19     want is a fair -- she -- I called her yesterday and let her know

20     that I was coming in here to let you know about the Buchmeier.

21     She supposed to -- I been having this stuff prepared months

22     ahead of time.  This just ain't -- and I asked her to call and

23     get the paperwork from Logan and have them fax it to her.  She

24     refused.  You know, I mean, she refused.

25            THE COURT:  Well, she --

1          MS. RIPPY:  Your Honor, to be fair, if I may -- I don't
2     mean to cut you off.
3          THE COURT:  Well, she should refuse if it doesn't
4     apply, anyway.
5          DEFENDANT POKE:  I mean, but who -- I mean, other than
6     she's saying that statement, it applies, but she ain't produced
7     it.  She had months to produce it and show it to me.
8          THE COURT:  Mr. Karner, you say that Buchmeier operates
9     the way Ms. Rippy says it operates.
10         MR. KARNER:  Judge, I read passages from cases.  If
11    your Honor wants, I can run down and try and pull some --
12         THE COURT:  Let's take ten, 15 minutes.  See if you can
13    pull those cases.
14         DEFENDANT POKE:  I mean, your Honor, I ain't trying to
15    be difficult here.  I just want my fair chance.
16         THE COURT:  I agree.  I agree with you.
17         DEFENDANT POKE:  Because if she would have just showed
18    it to me ahead of time, I would have just come here.  I want to
19    get this over with.  It's stressful for me.
20         THE COURT:  Mr. Karner is going to look for the cases,
21    I'll look for the cases, and we'll see where we go from there.
22         DEFENDANT POKE:  All right.  Thank you.
23       (Brief recess.)
24         THE COURT:  All right.  Where do we sit?
25         MS. RIPPY:  Well, my reading of the case, which is a --

1          THE COURT:  Which case?

2          MS. RIPPY:  It's United States v. Gant, a 2010 case.

3     The cite is 627 F.3d 677.  My reading of that case is that those

4     letters, there was some testimony from a -- sorry -- from some

5     employees of the Illinois Department of Corrections, and they

6     testified that the restoration of letters are form letters, and

7     they would only be sent after completion of parole.  So, from

8     that, I extrapolated that Mr. Poke never completed his parole

9     successfully.  He was always sent back on every one of his

10    convictions.  And that the letter, which was an automatic letter

11    that got sent out at the time, would not have been sent to him.

12         Now, perhaps -- and Mr. Poke disputes that I'm correct.

13    If I may, Mr. Poke indicated to me yesterday that if such a

14    letter exists, it would be found at Logan, the institution.

15         MR. KARNER:  Well, there is language in Buchmeier that

16    actually says the letters were sent on the expiration of the

17    state prison terms.  I was unable to find any cases that said --

18    that held that the unsuccessful completion of supervised release

19    did not involve a Buchmeier letter.

20         However, it is an affirmative defense to the charges

21    because -- I'm not going to go into it.  There used to be a

22    state law that said if you were convicted of a felony and you

23    remained without any convictions for a five-year period, then

24    you could resume possessing a handgun.  Obviously, that law has

25    been repealed.

1          But these letters were sent for a period of time.

2     Different letters were sent to different people.  But the burden

3     is on Mr. Poke.  The letter would have been sent to him, and the

4     burden is on him to show what letter he received and the wording

5     of that letter, and that would have been an affirmative defense

6     to the underlying convictions.

7          MS. RIPPY:  My understanding is also, your Honor, that

8     there are many different kinds of letters.  It's not just one

9     particular form letter.  And Mr. Poke is correct that those

10    letters were changed in 2004, but the conviction that he's

11    speaking about, the robbery conviction, the presentence

12    investigation report indicates that he was discharged in 2001.

13    He indicates that he seems to remember getting a letter.

14         THE COURT:  All right.  Mr. Poke, where we're at right

15    now is that your attorney is not going to advance this argument.

16    That leaves you with the choice of whether you're going to

17    proceed without the argument being made, or I suppose you could

18    claim that she's ineffective and you need another attorney.

19         DEFENDANT POKE:  Man, I just want to get this stuff

20    over with, man.  I mean, the point of the break was for her to

21    back up her statement that -- I mean, that ain't been proved.

22    That ain't happened, you know what I'm saying.  Mr. Karner ain't

23    come back with nothing to verify what she said.

24         And all this different types of generated letters, if

25    it was different types of generated letters, they would say that

1    they just stuck with one that suits the discharge of parolee.

2    They wouldn't change the whole system if it's different types of

3    letters that one --

4            MS. RIPPY:  If I may, your Honor.

5            DEFENDANT POKE:  I mean, it's one letter that they

6    changed in 2004 for being misleading.

7            THE COURT:  But there may not be one letter that every

8    single prison facility sends out.

9            DEFENDANT POKE:  He testified to it.  It's already

10   copied down.  All they do is sign it, put your name on it, and

11   mail it to your last known address.  It ain't no -- they don't

12   create no different letter for different people.  He already

13   testified --

14           THE COURT:  Who already testified?  Who testified?

15           DEFENDANT POKE:  Can you pull it up for me, please?  He

16   testified that it's --

17           MS. RIPPY:  Mr. Poke --

18           DEFENDANT POKE:  It's a letter that they just sign and

19   send it to the last known address.  That's it.  That's their

20   procedure.

21           MS. RIPPY:  Can I speak?

22           DEFENDANT POKE:  I mean, I was speaking already.  Go

23   ahead.  You can have it.  I'm sorry.  I apologize.

24           MS. RIPPY:  Mr. Poke is referencing some testimony in

25   the Gant case, but the Gant case testimony was that there are

```
 1    several different form letters that were being utilized, and --
 2              THE COURT:  Where is that?  Where's that?  I've got the
 3    Gant case in front of me.
 4              MS. RIPPY:  I'm sorry, your Honor?
 5              THE COURT:  I've got the Gant case in front of me.
 6    What language are you referencing?
 7              DEFENDANT POKE:  Don't you got the Jones?  Gant -- is
 8    that Gant?  Jones.  What's the one you sent?
 9              MS. RIPPY:  I sent you --
10              DEFENDANT POKE:  The Jones.
11              MS. RIPPY:  -- the Gant case.
12              DEFENDANT POKE:  Right.  Okay.
13              MS. RIPPY:  And the testimony of Mr. Heard from the
14    Illinois Department of Corrections --
15              DEFENDANT POKE:  Right there.  You got your hand on it
16    right there.
17              MS. RIPPY:  -- can be found at -- I'm just looking for
18    the --
19              DEFENDANT POKE:  It's right there.  Right there.
20              THE COURT:  680?
21              MS. RIPPY:  680.  Yes, your Honor.  I'm looking for the
22    page number.
23              THE COURT:  Well, 680 is the page number, I think.
24              MS. RIPPY:  Correct.  680 is the page number.  And the
25    district court judge in that case held an evidentiary hearing,
```

1      and the case sets -- or the various state employees also

2      testified at the hearing.  Kevin Heard, a technician at the

3      Illinois Department of Corrections, testified that the

4      restoration letters are form letters.  And then a little bit

5      further down it says Heard testified that the standard practice

6      was to send a letter, but because the Department did not keep a

7      list of letters sent or copies of the actual letters, he could

8      not verify that a letter was generated, signed, sent, or

9      received.

10             THE COURT:  All right.  It's up to you, Mr. Poke.  Tell

11     me what you want to do in this, and we'll do it.

12             MS. RIPPY:  Well, to be fair, your Honor, I'm not

13     unwilling to advance this argument for Mr. Poke.  I just want it

14     clear on the record that Mr. Poke -- we've discussed this

15     argument several times.  Mr. Poke only notified me yesterday of

16     where this purported letter might be found.

17             I don't know that -- your Honor already has objections

18     to several of the predicate offenses for the ACCA.  I've already

19     objected to two of them.  If we continued to object and object

20     to the robbery conviction, as well, then there's only two of the

21     five predicate offenses that your Honor might be able to use to

22     apply the enhancement of the ACCA, but we're left with the

23     career offender enhancement, and so --

24             THE COURT:  Right.  But the ACCA, it would do two

25     things.  It would increase the maximum for the felon in

1    possession of a firearm from ten years to life, I believe.

2              MR. KARNER:  Yes.

3              THE COURT:  And it would establish a minimum of

4    15 years.  That's the only role it plays here.  It doesn't have

5    anything to do with the guideline range.

6              MS. RIPPY:  Correct.  But it also -- the career

7    offender enhancement, as I read it, was a greater amount of --

8    and your Honor could apply that, as opposed to the ACCA.

9              THE COURT:  All right.  But the armed career criminal

10   designation only affects the penalty as to Count 2.  It doesn't

11   affect -- it doesn't drive the guideline range.

12             MS. RIPPY:  Well, but if your Honor applies the career

13   offender enhancement, then that applies to the whole sentencing.

14             THE COURT:  No matter whether Mr. Poke is right or

15   wrong on his objection to his designation as an armed career

16   criminal, that has no effect on the guidelines.  The guidelines

17   are still going to be 360 to life.

18             MS. RIPPY:  Correct.

19             THE COURT:  The only effect it has is that if he is an

20   armed career criminal, Count 2 has a 15-year minimum and a life

21   maximum.  If he's not an armed career criminal, then Count 2 has

22   no minimum and a ten-year maximum.

23             MS. RIPPY:  Correct.

24             THE COURT:  Right.  But the guideline range is still

25   going to be 360 to life.

```
 1              MS. RIPPY:  Correct.  If I may have a moment.

 2              THE COURT:  Sure.

 3         (Brief pause.)

 4              MS. RIPPY:  Your Honor, I'm going to ask to take a

 5    recess so that I can properly speak with my client in one of the

 6    attorney consulting rooms.

 7              MR. KARNER:  I can't hear that.  I didn't hear that.

 8              THE COURT:  You want a recess?

 9              MS. RIPPY:  Yes.

10              THE COURT:  How much time?

11              MS. RIPPY:  I need at least five minutes.

12              THE COURT:  All right.  Let's come back at --

13              MR. KARNER:  Judge, I have just a scheduling matter to

14    ask the court about.  I'm due in front of Judge Johnston at

15    11:00.

16              THE COURT:  I'll tell him that you can't be there.

17              MR. KARNER:  Okay.  Well, then I'll have someone cover.

18              THE COURT:  All right.

19              MR. KARNER:  And I'll just stay here then.

20              THE COURT:  All right.  Let's come back at five to

21    11:00 on the courtroom clock.

22              MS. RIPPY:  Thank you.

23         (Brief recess.)

24              THE COURT:  All right.  Ms. Rippy, tell me how you wish

25    to proceed.
```

1          MS. RIPPY:  I cannot advance the argument on the

2     Buchmeier case.  So, Mr. Poke needs to make a decision of

3     whether he wants to -- whether he wants me to ask the court to

4     relieve myself from the case as his attorney and whether he

5     wants to act as his own attorney.

6          DEFENDANT POKE:  And can I get a reason why she can't

7     advance with the Buchmeier case?

8          THE COURT:  Sure.

9          MS. RIPPY:  The reason is because the case law

10    indicates that -- well, I've done the research.  The case law

11    does not advance the argument for a Buchmeier letter and having

12    any effect on either the ACCA or the robbery conviction in

13    Mr. Poke's instance, and I just -- without the letter, without

14    Mr. Poke -- his testimony as to whether he actually did receive

15    the letter, I can't advance that argument.

16         THE COURT:  The only comment that I would make is I

17    think it would be difficult to find someone from the Department

18    of Corrections who would be able to testify that they sent the

19    letter to you.  You say you received the letter.  What happened

20    to it?

21         DEFENDANT POKE:  Your Honor --

22         THE COURT:  And what did the letter say?  You didn't

23    memorize it, I don't think.

24         DEFENDANT POKE:  I mean, it's not multiple -- it's not

25    multiple letters.  I mean, it ain't the point of finding

1    somebody from the Department of Corrections.  It's -- I mean, in

2    the Jones case or the case she read from, it said various

3    employees had testified to the same thing Kevin Heard testified

4    to.  It ain't that I need the actual letter.  All I -- I mean,

5    preponderance of the evidence is that all I got to show that I

6    received it under some type of means.

7         And by me being -- finishing my parole off in the DOC,

8    in the Department of Corrections, the only way I can get

9    released, if the parole board sent this exact letter to the

10   corrections that I'm being held at to notify them to release me

11   and that my parole have been discharged, and I would have

12   received this same letter letting me know my discharge date,

13   which the date that I get released.  I mean, other than that,

14   the department wouldn't know when to release me.  I wouldn't

15   have known when I got released.  So, the board have to send this

16   to me to let me know when I leave, and they sent it the day

17   before, as well as to the department, to notify them that my

18   parole have been discharged under these circumstances.

19        THE COURT:  Well, you'd have to have some testimony

20   from some person knowledgeable of those procedures that would be

21   able to say those things.

22        DEFENDANT POKE:  I mean, well, I asked her to call --

23   all she had to do was call them and ask them do they still have

24   my -- I'm pretty sure they got my discharge file because they

25   had to release me from custody.  So, I don't think that's no

1   paperwork they can hide or take out of their file because I was

2   released from prison.  Without the discharge paper or me

3   receiving it, I wouldn't have never got released.

4        THE COURT:  How do I know that?  How do you know that?

5        DEFENDANT POKE:  Because I'm standing here talking to

6   you because I had to --

7        THE COURT:  Well, I know you got released, but I don't

8   know that you can't get released without the letter.

9        DEFENDANT POKE:  Because it was a parole violation.  I

10  had to -- the people that control the letter, I had to go talk

11  to them specific, and they had to determine when they was going

12  to release me.  So, for them to do that, they had to send a

13  letter to the Department of Corrections to let them --

14       THE COURT:  Where's the letter?

15       DEFENDANT POKE:  Your Honor, that was 13 years ago.  He

16  testified that there's only one --

17       THE COURT:  I have letters I received in high school.

18  Where's the letter?

19       DEFENDANT POKE:  You know, your Honor, I understand

20  what's going on here.  I can't -- you know what I'm saying.  I

21  ain't trying to disrupt the court and then, you know -- man.

22       THE COURT:  Don't feel because you're advocating a

23  position for yourself that you're disrupting the court.  That's

24  what I do.  That's my job.  And I'm more than happy to do it.

25       DEFENDANT POKE:  I mean, he already said that I don't

1    need the actual letter.

2              THE COURT:  Who said that you don't need it?

3              DEFENDANT POKE:  I mean, the case law.  What's the case

4    law we was reciting?  I mean, you still my lawyer right now,

5    right?

6              THE COURT:  Right.

7              DEFENDANT POKE:  She just read it.  I don't need the

8    actual letter.  All I got to do is prove preponderance of the

9    evidence, and I feel like I'm proving that.

10             THE COURT:  Well, no, you're not proving anything now

11   because we don't have a hearing.  We have to have a hearing, and

12   we'd have to have witnesses come and testify.  You're --

13             DEFENDANT POKE:  I mean --

14             MS. RIPPY:  Well --

15             THE COURT:  -- saying things --

16             DEFENDANT POKE:  Well, I mean, I thought this was the

17   hearing.  I thought this how --

18             THE COURT:  No, we'd have to have a hearing.  This

19   issue was not brought up before.

20             DEFENDANT POKE:  I mean, actually, I brought this issue

21   up a few months back like with Mr. Caver.

22             THE COURT:  All right.  In order to advance this, I'm

23   going to have to set this for hearing, and we're going to have

24   to bring people in, and you're going to have to make your case

25   by a preponderance of the evidence that you received a letter

1    which had wording that brought you within the parameters of the

2    Buchmeier case.  And even if we did that, it's just going to

3    affect the sentencing parameters on Count 2.  It's not going to

4    affect the guideline range.  But I want you to do what you think

5    is in your best interests.

6            DEFENDANT POKE:  I mean, my best interests is to create

7    me the best fight as possible.  I mean, for me to sit here and

8    be like okay, well, I'm just going to do the 360 months, I

9    mean -- because the more priors that I got knocked down off my

10   background, then that takes from the 360 months -- what got me

11   up to 360 months is the career.

12           THE COURT:  Okay.

13           DEFENDANT POKE:  It's the small -- it's the very small

14   amount of drugs.

15           THE COURT:  But you have to understand your career

16   range is not 360 months.  It's 360 months to life.

17           DEFENDANT POKE:  Right.

18           THE COURT:  A life sentence for you would still be a

19   guideline sentence.

20           DEFENDANT POKE:  Right.  I mean, I understand all that,

21   you know what I'm saying.  But my actual -- with all the crazy

22   enhancements, my actual charge is zero to ten.  So, by me

23   challenging my priors, that will put me back at my original

24   guideline range.

25           THE COURT:  No.  No.  Your designation as an armed

1    career criminal has no effect on your guideline range.  If

2    everything you say is true and you win completely on your

3    argument as to not being an armed career offender, your

4    guideline range is still going to be 360 to life.

5            DEFENDANT POKE:  So, I understand that.  So, what got

6    my guidelines -- can I ask you like what got my guidelines at

7    360 to life?

8            THE COURT:  Your designation as a career offender.  Not

9    armed career criminal.

10           DEFENDANT POKE:  I know, but the same priors that

11   affect the armed career criminal, you need them same elements to

12   be a career criminal.  So, even if I get that knocked off, it

13   still helps toward the career offender.

14           THE COURT:  No.  It's not going to make any

15   difference --

16           DEFENDANT POKE:  I mean --

17           THE COURT:  -- as far as your designation as a career

18   offender.

19           DEFENDANT POKE:  It takes two to have -- to be -- it

20   takes --

21           THE COURT:  Right.  But the specific language we're

22   talking about is specifically because of language that's in the

23   armed career criminal statute.  It's not the same language that

24   applies toward the career offender designation.

25           DEFENDANT POKE:  No, but it's the same -- it's the same

```
1    elements of the -- it's the same -- the violence.
2              THE COURT:  But also career offender only needs two
3    predicate offenses.
4              DEFENDANT POKE:  Exactly.  That's what I'm saying.
5              THE COURT:  So, you've already got the two drug
6    offenses.
7              DEFENDANT POKE:  Right.  But I'm also challenging one
8    of them.  That's also in the sentencing memorandum.  So, I mean,
9    your Honor, the more the better.  I don't think I supposed to
10   sit here --
11             THE COURT:  What drug offense are you challenging?
12             DEFENDANT POKE:  My --
13             MR. KARNER:  The one we supplied the certified copy of
14   conviction for as an exhibit, your Honor.
15             THE COURT:  Oh, that one.  Yes.  All right.  Okay.
16             DEFENDANT POKE:  Yeah, but you supplied that, but that
17   ain't what I signed for.  I got my actual paperwork that I
18   signed for, and it altered and all type of stuff.  And when I
19   signed the plea, why would I get a -- sign to something amended
20   to the same thing?  A plea is when you sign for a lesser deal.
21             THE COURT:  Well, I think the difference there was you
22   were charged with possession with intent to deliver drugs within
23   a certain amount of area by a church, I think it was.  And then
24   they took -- the area between the church, they took the church
25   enhancement away, but it was still a felony because of
```

```
 1    possession with intent to deliver even if they took the church

 2    away.

 3              MR. KARNER:  That's right.  It went from a Class X to a

 4    Class 1.

 5              DEFENDANT POKE:  The Class X was dropped even before I

 6    made the plea deal because I wasn't a thousand feet within no

 7    church.  That was all determined before the plea deal even

 8    happened.

 9              MR. KARNER:  Judge, I think we're getting a little far

10    afield here.  Can the defense inform us of what their position

11    is going to be on this Buchmeier --

12              DEFENDANT POKE:  I've got my proof that that ain't what

13    I signed for, you know.  I got my papers that I signed, and that

14    ain't what I signed for.  Other than what they brought in here,

15    you know -- I mean, he got his right to show his evidence.  I

16    got my right.  And that ain't what I signed for.

17              And if you look in the PSI, I signed for simple

18    possession.  And if you clearly look in the PSI, once they found

19    out that I served the time for the charge that I did the time

20    for, then the possession or whatever they did got dismissed nine

21    years later, and I never been to court.  It just got dismissed

22    like, you know.  And this case was in 2000 and something.

23              So, if you look at that, it's -- I mean, you know, they

24    rigged it up how they wanted to rig it up, but, you know, it

25    ain't what I signed for.  And I explained that to her.  I mean,
```

1 and then when you on the streets and you didn't already serve

2 time for something that you ain't signed for, I mean, then --

3    THE COURT:  Well, that's why we're here.  I mean, you

4 can present your evidence, and the government will present its

5 evidence, and I'll make a decision.

6    DEFENDANT POKE:  Right.  Okay.  And that leaves me with

7 one prior.  So, I think that will -- I mean, if --

8    THE COURT:  If you only had one prior, then that

9 wouldn't qualify you as a career offender.

10    DEFENDANT POKE:  Exactly.

11    THE COURT:  All right.  But that's different from armed

12 career --

13    DEFENDANT POKE:  Yeah.

14    THE COURT:  -- criminal, and that's what we're talking

15 about right now.

16    DEFENDANT POKE:  Yeah.

17    THE COURT:  So, tell me what you want to do, and that's

18 what we'll do.  I mean, we'll still have a hearing on career

19 offender.  We'll still take evidence on career offender, if

20 that's what you want to do.

21  (Brief pause.)

22    MS. RIPPY:  Mr. Poke has requested that we contact or I

23 contact Logan to determine whether his paperwork can be located

24 and whether or not the letter which he's talking about is in

25 that file.  I believe that is a reasonable request.  I will do

1    it and communicate that to Mr. Poke, and then he can decide what

2    he wants to do.  Mr. Poke wants to advance certain arguments

3    that I don't feel are proper.

4          THE COURT:  All right.  You're asking for a

5    continuance?

6          MS. RIPPY:  I'm asking for a continuance, yes, your

7    Honor.  I know this is a -- at this late date, but I don't

8    believe that I have any choice but to at least try to find --

9          THE COURT:  How much time do you need to do this?

10         MS. RIPPY:  That really depends on the institution, as

11   to whether or not they can locate his file quickly.

12         Mr. Karner, do you have any idea?

13         MR. KARNER:  Well, I don't.  And I object to the

14   continuance because even if there is a form letter on file, it

15   doesn't mean it was sent or received by the defendant.

16         THE COURT:  All right.

17         DEFENDANT POKE:  I mean --

18         THE COURT:  But if there isn't a form letter on file,

19   then that may aid Mr. Poke in his decision as to whether he

20   wants to advance the armed career criminal designation

21   objection.

22         Tell me how much time you need to ascertain that

23   information.

24         MS. RIPPY:  Well, I will immediately contact the

25   institution this afternoon as soon as I get back to my office,

1    and I would imagine that it will take them a week or so to get

2    it back to me.  I have to communicate that back to Mr. Poke.

3    So, I would say three weeks.

4              THE COURT:  Say how long?

5              MS. RIPPY:  Three weeks.

6              THE COURT:  All right.  I'll set this for status on

7    Friday, April 4th, at 9:00 o'clock and --

8              DEFENDANT POKE:  Your Honor, can I make a suggestion?

9    Well, if you give me probation today, we don't even got to go

10   through all this.  I'd take that.

11             THE COURT:  That's a good point, but I can't say right

12   now what your sentence would be until after I've considered all

13   the factors and heard all the evidence.

14             DEFENDANT POKE:  Okay.

15             MR. KARNER:  Judge, concerning the issue on the

16   possession with intent -- and we've got documents that show

17   Dayton Poke is lying about that -- will the court just accept

18   our proffer of these documents then at the sentencing hearing?

19             THE COURT:  I'll accept whatever you have.

20             MR. KARNER:  Okay.

21             DEFENDANT POKE:  He got the same documents I was going

22   to give you.  They've been forged after I signed.  I mean, it's

23   plain.  After I signed, they scraped out and wrote down what

24   they wanted to put that I was signing to, and I don't think

25   that's fair, even though the time that I took carried the same

1    amount of time because I was extended term at the time.  So, no

2    matter which charge that they gave me, I still was going to have

3    to serve the same amount of time.  But for them to give me a

4    greater charge because they feel like it affect me in the long

5    run, I guess, then I don't think that's fair.

6            THE COURT:  All right.  At the new sentencing hearing,

7    I'll take evidence, and I'll decide whether the government has

8    proved by a preponderance of the evidence that you indeed

9    committed an offense that would qualify as a predicate offense

10   for the career offender designation.

11           MR. KARNER:  And, again, I'd just like to point out to

12   the court the defendant is just making this stuff up as he goes

13   along because not five minutes ago he said -- he told the court

14   that he signed a plea document that shows simply possession.

15   Now, five minutes after the fact, he's saying, well, they may

16   have my signature, but now they are forged.

17           DEFENDANT POKE:  No.

18           MR. KARNER:  He's making a story up every time he opens

19   his mouth.

20           DEFENDANT POKE:  Your Honor, I said I signed for a

21   Class 4.  I mean, he got the documents.  Hand him the documents,

22   yeah, so he can see -- I mean, I don't need to make this stuff

23   up.  I just want to --

24           MR. KARNER:  I'll be happy to tender the document.

25           DEFENDANT POKE:  Yeah.

1          MR. KARNER:  I'm tendering the court the bill of

2    indictment that alleges on its face a Class 1 felony.  Judgment,

3    sentenced to Illinois Department of Corrections, where it says

4    Class 1 felony.  And I'll tender to the court the plea of guilty

5    signed by one Dayton Poke that says Class 1 felony as amended on

6    the indictment face.

7          THE COURT:  Any objection to me receiving those?

8          DEFENDANT POKE:  Excuse me?

9          THE COURT:  Is there any objection -- I'm talking to

10   Ms. Rippy.  Is there any objection to receiving those in

11   evidence?

12         MS. RIPPY:  No, your Honor.

13         THE COURT:  All right.

14         DEFENDANT POKE:  I mean, and if you look at the

15   documents, the actual stuff been scribbled out, and they wrote

16   what they wanted to write on there for the record.  It ain't the

17   actual -- it ain't the actual paper what I signed for.  The

18   paper's been altered.  So, how can we accept that as proof for

19   the court?

20         THE COURT:  I've just accepted it.

21         DEFENDANT POKE:  I mean, not accepted it.  I'm sorry.

22   I'm sorry.  I didn't mean to say that.  Evidence or whatever.

23         MR. KARNER:  I just heard the defendant say he was

24   going to show that there was a Class 4 felony shown there.

25         THE COURT:  Well, if it was a Class 4, wouldn't that

1    still be a predicate offense?

2         MR. KARNER:  No.  A Class 4 would not be a predicate

3    offense.  But it's not a Class 4.  It's clearly documented on

4    every piece of paper that is prepared when a person is sent to

5    the Illinois Department of Corrections that it is a Class 1

6    felony and a predicate felony.

7         DEFENDANT POKE:  Your Honor, that's after the original

8    papers was scribbled out after I signed.  Them the original

9    documents.  That's the only paper I signed for, I put my

10   signature on, is the deal -- and as you can see, that stuff was

11   scribbled out after I signed.  I mean --

12        MR. KARNER:  Judge, it would have been physically

13   impossible for this man to have served four years in the

14   Department of Corrections if he simply pled to a possession

15   charge because under Illinois law a possession charge carries a

16   one to three range.

17        DEFENDANT POKE:  I just told him I was extended term.

18   So, I would have served the same four years no matter --

19        THE COURT:  Is there any way you can be convicted of

20   possession with intent to deliver and still have a Class 4, or

21   does it have to be --

22        MR. KARNER:  No.

23        THE COURT:  It has to be a class what at least?

24        MR. KARNER:  It's either a Class 1 or Class 2.  Under

25   Illinois law, Class 2 is possession with intent to distribute or

1    deliver less than one gram.  A Class 1 is one to 15 grams.  And

2    a Class X is 15 and above.

3              THE COURT:  All right.

4              DEFENDANT POKE:  But if you got two past convictions

5    that's higher than the one that you didn't already caught, you

6    get extended term, which take the one to three as a possession

7    to a two to six.  So, I still would have served four years no

8    matter what.  I was extended term because of my prior.  The same

9    thing that you all using, they use it over in the state in a

10   similar fashion.  Is that right, Mr. Karner?

11             MR. KARNER:  Judge, I would also ask leave to submit to

12   you the copy of the docket sheet.  Let me just make sure.

13             DEFENDANT POKE:  I mean, if we going to submit

14   something, submit something from me saying that I signed knowing

15   that I was signing to it, you know what I'm saying.

16             MR. KARNER:  I'd also ask leave to submit a copy of the

17   court's docket sheet in the case that we just submitted, and I

18   would just add -- and this has been tendered previously in

19   discovery to the defense -- that on March 26th, 2002, the

20   defendant entered into a guilty plea Class 1 as amended with the

21   four-year sentence.

22             DEFENDANT POKE:  Can we get the transcripts?

23             THE COURT:  Okay.  Any objection to that docket sheet,

24   Ms. Rippy?

25             MS. RIPPY:  If I could have a copy of that one, your

1     Honor.

2              MR. KARNER:  I provided that in discovery.

3              MS. RIPPY:  Oh, wait a second.  I may have it.

4              DEFENDANT POKE:  I mean, your Honor --

5              THE COURT:  Wait a minute.  Let's take things one step

6     at a time.

7              MS. RIPPY:  I don't have any objection if I could get a

8     copy of it, though.  I think I've seen it, but I don't have it

9     with me.

10             THE COURT:  Don't leave until I get a copy for you

11    then.

12             MS. RIPPY:  Thank you.

13             THE COURT:  All right.  And what do you want to show

14    me, Mr. --

15             DEFENDANT POKE:  I was going to provide you them same

16    documents, but I think --

17             THE COURT:  Well, let me see the documents.

18             DEFENDANT POKE:  Oh, what I got?  What he got?  I mean,

19    I got the same thing what he just gave you.

20             THE COURT:  Oh.

21             DEFENDANT POKE:  Yeah.  What I would say -- I mean,

22    it's irrelevant to add all these other papers that was created

23    after the original plea was altered.  Of course everything else

24    going to say what they want it to say after.  The only thing --

25    the only thing that I signed to I thought was the Class 4

1    felony, which was scribbled out at the top.  Everything else

2    came after that, after I signed what I thought I signed for.

3    So, I feel like that stuff should be irrelevant because of

4    course it going to say what they want it to say after.

5              THE COURT:  Who altered the plea?  Who altered these

6    documents?

7              DEFENDANT POKE:  I mean, I don't know.  Not me.  That's

8    how they came to me.  You would have to ask the government that.

9    That's how he provided them to me.

10             THE COURT:  And why do you say they were different?

11             DEFENDANT POKE:  Huh?

12             THE COURT:  Why do you say they were different?

13             DEFENDANT POKE:  No, I didn't say they different.  I

14   was saying that they was scribbled off -- the original words and

15   original stuff that I pleaded to, as you can see, it's scribbled

16   up.  It's changed.  It's altered.

17             THE COURT:  All right.  But it's also -- it shows ASA

18   SJB.  Is that Mr. Biagi, I assume?

19             MR. KARNER:  Yes.

20             THE COURT:  March 26th, 2000 and -- I can't read that.

21             MR. KARNER:  I think it's 2002, Judge.

22             THE COURT:  March 26th, 2002.

23             DEFENDANT POKE:  All that stuff had to be created after

24   I signed.  My signature only on one thing.  I ain't signed all

25   them documents.

1          THE COURT:  But you signed a plea of guilty that

2    says --

3          DEFENDANT POKE:  Right.  For a Class 4 felony.  I mean,

4    it's clearly that it's altered.  I ain't alter it.  And it's

5    sealed after it been altered.  So, I mean --

6          THE COURT:  But things are -- pleadings and documents

7    are altered all the time during sentencing.

8          DEFENDANT POKE:  I mean, not when -- a plea deal when

9    you thinking you taking one thing and then it's changed to

10   another one, I mean, I don't think that happen all the time.  I

11   mean, when the State's Attorney want you to have a more serious

12   charge than one that you pleading to, yeah, it will be altered

13   then.

14         THE COURT:  All right.  I'll take evidence at the

15   sentencing hearing when we set it for sentencing.

16         MR. KARNER:  And Friday, April 4th, is just a status

17   for them to report back on the progress with this letter.

18         THE COURT:  Right.  And to let me know whether they're

19   going to pursue an objection to the armed career criminal

20   designation.  If Ms. Rippy says that she's not going to pursue

21   it, then Mr. Poke's going to have to tell me whether he wishes

22   to file a motion to have her terminated as his attorney, and

23   then he's going to have to decide whether he wants to represent

24   himself or whether he wants another attorney to represent him,

25   and I'm going to have to decide whether I'm going to allow

1    Ms. Rippy to cease her representation.

2              MR. KARNER:  Judge, I'm also going to ask that the

3    court impose a firm cutoff then on that next status date for

4    raising any other objection or sentencing issue.

5              THE COURT:  Well, I can't do that, just because

6    something may come up the day before we walk in the courtroom.

7              MR. KARNER:  I guess that's what I'm trying to avoid.

8              THE COURT:  Well, but I'm saying some evidentiary

9    matter may come up.  Some new witness revelation may surface.

10    Okay.

11              DEFENDANT POKE:  You can't have your way all the time,

12    Mark.

13         (Which were all the proceedings had in the above-entitled

14          cause on the day and date aforesaid.)

15         I certify that the foregoing is a correct transcript from

16    the record of proceedings in the above-entitled matter.

17

18

          _____
19    Mary T. Lindbloom
      Official Court Reporter
20

21

22

23

24

25