```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                              WESTERN DIVISION

 3     UNITED STATES OF AMERICA,      )      Docket No. 11 CR 50062
                                      )
 4                    Plaintiff,      )      Rockford, Illinois
                                      )      Friday, May 16, 2014
 5              v.                    )      10:00 o'clock a.m.
                                      )
 6     DAYTON POKE,                   )
                                      )
 7                    Defendant.      )

 8                        TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE FREDERICK J. KAPALA
 9
         APPEARANCES:
10
         For the Government:          HON. ZACHARY T. FARDON
11                                    United States Attorney
                                      (327 S. Church Street,
12                                     Rockford, IL  61101) by
                                      MR. MARK T. KARNER
13                                    Assistant U.S. Attorney

14       For the Defendant:          LAW OFFICE OF TINA LONG RIPPY
                                      (216 N. Court Street,
15                                     Rockford, IL  61103) by
                                      MS. TINA LONG RIPPY
16
         Also Present:               MS. JENNIFER TABORSKI
17                                    Probation Office

18       Court Reporter:             Mary T. Lindbloom
                                      327 S. Church Street
19                                    Rockford, Illinois  61101
                                      (779) 772-8309
20

21

22

23

24

25
```

1          MR. KARNER:  Good morning, your Honor.  Mark Karner on

2     behalf of the United States.

3          MS. RIPPY:  Good morning, your Honor.  Tina Rippy on

4     behalf of Mr. Poke, who is here in custody today.

5          THE COURT:  Good morning.

6          This comes before the court on the defendant's second

7     supplemental sentencing memorandum in which the defendant argues

8     that Mr. Poke is not an armed career criminal; is that correct?

9     That's where we are?

10         MS. RIPPY:  That is correct, your Honor.  That's the

11    issue for today.

12         THE COURT:  I wanted to bring up the fact that at one

13    point Mr. Poke orally challenged the drug offenses as predicate

14    offenses, and if I haven't done it, I will deny that motion or

15    strike that motion because at the time he made the motion or

16    objection or whatever it was, he was represented by an attorney.

17         MR. KARNER:  Judge, I would also add to that that as

18    the court is aware, under Gant v. United States, footnote two,

19    the provision relied on, the Buchmeier issue, 18 U.S.C.

20    921(a)(20), the court points out that that statutory provision

21    does not apply to serious drug convictions, only violent

22    felonies.

23         THE COURT:  What doesn't apply?

24         MR. KARNER:  The statutory provision that deals with

25    the restoration of civil rights.  That does not apply to serious

1    drug convictions, according to footnote two in the Gant

2    decision.

3              THE COURT:  Right.  You're talking about 921(a)(20)?

4              MR. KARNER:  Yes, sir.

5              THE COURT:  The definition of crime punishable by

6    imprisonment for a term exceeding one year is not implicated in

7    the definition of serious drug offense as it's used in 924(e).

8              MR. KARNER:  Exactly right.

9              THE COURT:  Do you agree?

10             MS. RIPPY:  Well, your Honor, I think that that is

11   correct, that Gant does indicate that.  I could not find any

12   other case law that discussed that issue, and I believe that

13   it's proper at this point to raise that issue here at the

14   sentencing so that that issue can be raised again on appeal.

15             I did intend to argue that the Buchmeier issue and the

16   letter does apply to the possession with intent to deliver

17   convictions below the 2001 and the 2004 discharges or cases.

18   So, I would like to retain those issues --

19             THE COURT:  Okay.

20             MS. RIPPY:  -- at this time.

21             THE COURT:  But explain to me how they could possibly

22   be implicated, though.  924(e)(2)(B) talks about the term

23   violent felony, and it's only in that definition that the phrase

24   any crime punishable by imprisonment for a term exceeding one

25   year appears.  That interpretation incorporates the definition

1    section of 921(a)(20) where Buchmeier is involved.  But I don't

2    see how there's any connection at all between that and serious

3    drug offense.  Can you explain that to me?

4              MS. RIPPY:  Well, here's my thought on that.  Both a

5    violent felony and a serious drug conviction require a

6    conviction, and 921(a)(20) is very specific about what does

7    not -- what a -- what constitutes a conviction.

8              THE COURT:  Well, let me correct you.  It's very

9    specific about defining the term crime -- or the phrase crime

10   punishable by imprisonment for a term exceeding one year.  It

11   doesn't say conviction.

12             MS. RIPPY:  Well, a crime punishable by a term of

13   imprisonment for one year is a conviction, and a serious drug

14   conviction is a conviction.  So, under both of those -- both a

15   violent felony and a serious drug conviction are both required

16   convictions.  A conviction cannot be a predicate offense if the

17   conviction was -- if there was a restoration of civil rights and

18   there was no exclusionary provision in the notice of that

19   restoration of civil rights.  That's our position.

20             THE COURT:  How do you reconcile that position with

21   Gant?

22             MS. RIPPY:  I think that that is -- I'm sorry?

23             THE COURT:  Are you just saying Gant's wrong?

24             MS. RIPPY:  I'm saying Gant's -- it's a footnote.  I

25   don't know that it's even really fleshed out in Gant as to why

1     the court found that.  And so, I'm challenging Gant.

2              THE COURT:  All right.  You were going to present

3     evidence, but you've advised me that you're not going to do that

4     now?

5              MR. KARNER:  I sent an e-mail to the court with counsel

6     cc'd in yesterday when I made that decision, Judge.

7              THE COURT:  All right.  By the way, Ms. Rippy, are you

8     contesting the defendant's designation as a career offender?

9              MS. RIPPY:  Mr. Poke indicates that he is contesting

10    everything.

11             THE COURT:  Well, that doesn't help me much.

12             MS. RIPPY:  I understand, your Honor.

13             THE COURT:  It's hard -- it's impossible for me to

14    address an argument where a defendant just says he's contesting

15    everything.  There's no way to handle that.  But my question is

16    whether you're contesting the career offender designation.

17             MS. RIPPY:  Well, this case is very difficult, your

18    Honor.

19             THE COURT:  And I'll note for the record that Mr. Poke

20    is in your ear every time I ask a question, that he says things

21    to you, but --

22             MS. RIPPY:  Perhaps I can try to answer the court's

23    question without Mr. Poke's help here.  This case has been -- as

24    the court knows, it's been very difficult, very lengthy.  The

25    sentencing just seems to go on and on and on.  And I've tried as

1    Mr. Poke's attorney to be very receptive to all the issues that

2    Mr. Poke has requested that I look into.

3              I've discussed the career offender issue with Mr. Poke,

4    and Mr. Poke has repeatedly indicated that he wants to challenge

5    everything.  I think under -- the definitions of what is a

6    predicate offense under the ACCA are different than what is a

7    predicate offense that counts under the career offender, and

8    under those definitions I believe that it's difficult to

9    challenge the two drug convictions that count as predicate

10   offenses under the career offender.

11             THE COURT:  Well, let me ask you this then.  Do you

12   have any argument for challenging the career offender

13   designation?

14             Mr. Poke, I'm having trouble --

15             DEFENDANT POKE:  Well, maybe you should talk to me

16   then.  I mean, because if she ain't comprehending it, you know.

17   The two drug cases is supposed to be charged --

18             THE COURT:  You didn't let me finish.  I'm having

19   trouble hearing Mrs. Rippy because you're talking over everybody

20   in the courtroom.

21             DEFENDANT POKE:  No, I'm not talking over everybody,

22   your Honor.  I mean, if she's not understanding what's going on,

23   I think it's my part because this is not also just her case,

24   this is my case and my life.  So, if she's not understanding it,

25   I got to relay the message to her what -- I mean --

1           THE COURT:  Okay.  Why don't you sit down, take a

2    moment, and then you can tell me what your argument is for

3    challenging the career offender designation.

4           MR. KARNER:  The only thing I'd point out, your Honor,

5    is that we've not received any notice of any argument or

6    objection raised to the career offender.

7           THE COURT:  Okay.  Well, I want to see what the

8    argument is.

9           MS. RIPPY:  Um --

10          THE COURT:  No.  You can sit down with Mr. Poke --

11          MS. RIPPY:  Oh.

12          THE COURT:  -- if you want to talk to him about it.

13          MS. RIPPY:  Oh.  Thank you, your Honor.  I'm sorry.  I

14   misunderstood you.

15      (Brief pause.)

16          THE COURT:  All right.  Attorney Rippy, argument.

17          MS. RIPPY:  Judge, at this time Mr. Poke would like to

18   challenge his career offender enhancement on the basis of the

19   categorical approach set out in Taylor, in Taylor v. United

20   States, and that that categorical approach would preclude the

21   court from finding he was convicted of a serious drug offense.

22   That is Mr. Poke's challenge to that.

23          I have tried to explain to Mr. Poke that the

24   definitions for career offender are different from that of a

25   drug offense under the ACCA and that while the categorical

1    approach works in both career offender enhancements and the

2    ACCA, the question that the court looks at in the categorical

3    approach is whether it is a serious drug offense under the ACCA,

4    but that the definition under career offender is a prior

5    conviction, a prior drug conviction with a sentence of more than

6    one year, not a serious drug offense, which is a prior drug

7    conviction with a possible sentence of more than ten years.

8    These are two different definitions.

9            Mr. Poke has a different perspective on that, and I

10   would ask that he be allowed to express that, given the facts of

11   the way that this sentencing hearing has gone.

12           THE COURT:  Well, he expresses his position through you

13   as his attorney, but --

14           MS. RIPPY:  Okay.

15           THE COURT:  -- the basis for his objection to his

16   designation as a career offender is what you call a categorical

17   approach as set out in Taylor.

18           MS. RIPPY:  Correct.

19           THE COURT:  All right.  Mr. Karner.

20           MR. KARNER:  He's wrong.  Both offenses --

21           THE COURT:  Okay.  Go ahead.

22           MR. KARNER:  Both offenses are serious drug offenses.

23   They're convictions under Illinois law for possessing with

24   intent to deliver one gram or more but less than 15 grams of

25   cocaine.  Those are Class 1 felonies under Illinois law that

1    require a range of punishment of from four to 15 years in the

2    Department of Corrections.  In addition, both are within 15

3    years based on their dates of conviction, along with the

4    sentences.  So, they qualify as predicate crimes under the

5    career offender guideline.

6            THE COURT:  Right.  Let me hear your argument as to the

7    ACC designation in Buchmeier.

8            MR. KARNER:  Okay.  Judge, first of all, as the court

9    knows, Buchmeier establishes an objective standard.  Our

10   position is two-fold on the Buchmeier issue.  Number one, we

11   contend that defendant failed to satisfy his burden of proof by

12   a preponderance of the evidence.  His testimony that he -- well,

13   his testimony in whole was incredible.  I ask the court to

14   consider, number one, his bias here.  He's got the ultimate

15   interest in the outcome of this case.  Number two, I'd ask the

16   court in assessing his credibility, his prior criminal history.

17   A man with that prior criminal history we submit is incapable of

18   telling the truth.

19           And on top of that is his selective memory.  He failed

20   to show -- he can only testify -- his testimony comes down to

21   this.  I received a letter, and it looked something like the

22   letter counsel -- the three letters counsel submitted as

23   exhibits.  He couldn't tell us about where he was when he

24   received the letters, his addresses.  He couldn't tell us the

25   wording of the letter that he contends he received.  And he

1    certainly didn't show any reliance on the letter.  Now, reliance

2    is not a basis under the objective standard for saying Buchmeier

3    doesn't apply, but it certainly goes to his credibility.

4         But, Judge, our second point is even if you exclude the

5    robbery conviction, he is still eligible under the Armed Career

6    Criminal Act because of his two prior convictions for serious

7    drug offenses and his felony mob action conviction.  We've

8    submitted the law on that and believe that the physical

9    altercation phrase that's in the charging instrument shows a

10   serious risk of bodily harm.  So, we ask that the court find

11   defendant eligible under the Armed Career Criminal Act.

12        THE COURT:  All right.  Anything more, Attorney Rippy,

13   on that?

14        MS. RIPPY:  Judge, on the Buchmeier issue, I believe

15   that what the government has indicated is that Mr. Poke has not

16   met his burden of proof.  It is a preponderance of the evidence.

17   It is a low burden of proof.

18        Mr. Poke testified that he received the discharge

19   letters on or about when he was discharged in the three

20   convictions, the robbery and the two possession with intent to

21   deliver convictions.  We know from the samples that have been

22   submitted as exhibits to my sentencing memorandum that those

23   dates do line up with the pre-Buchmeier letters that were

24   objectionable and were found to be inadequate under Buchmeier.

25        The dates of his discharges in the three convictions

1    were 2001, 2005, and 2007.  The Illinois Department of

2    Corrections did not change its letter to include the

3    exclusionary language required under 921(a)(20) until the

4    Buchmeier case was decided in 2009.  And those letters do

5    demonstrate the differences between the post-Buchmeier and the

6    pre-Buchmeier language.

7         There is an administrative directive that has been

8    submitted as an Exhibit B to my sentencing memorandum that makes

9    it mandatory that those notices of discharge be sent either

10   by -- well, that the releasee is notified of the restoration of

11   rights.  There is not -- it is not -- it is a mandatory

12   notification that the department engages in.

13        And we know from the declaration of the chief of parole

14   division that it was not the practice of the IDOC to keep copies

15   of those in the master file.  So, there is no record that those

16   were sent out.  Burnett does talk about an objective standard,

17   and what the Burnett court indicated was that the standard

18   depends on the content of the communication, not on the extent

19   of the recipient's understanding, misunderstanding, or even

20   whether they read it or understood the communication.

21        The court must look to the four corners of the document

22   and decide whether it meets the 921(a)(20) requirements.  In

23   this case those notifications did not, and we've met our burden

24   of proof by Mr. Poke indicating that he did get them.  They

25   do -- all of those convictions and their release dates,

1    discharge dates, do line up with the appropriate letters.

2            And we contend that both the robbery and the drug

3    convictions under my previous indications to the court may not

4    be used for predicate offenses, which means that only the mob

5    action conviction remains, and I've already submitted my brief

6    on that issue, and I'll stand on that.

7            THE COURT:  All right.  I will get a decision to you

8    within the next few days.  Let's set this for sentencing.

9            MR. KARNER:  Judge, the only day I cannot be available

10   is Wednesday, May 28th, because I have to go to Madison to get a

11   government security card.

12           THE COURT:  All right.

13           MR. KARNER:  But any other day is fine.

14           THE COURT:  How about May 29th at 9:30?

15           MR. KARNER:  I believe I have something in the morning.

16   Can we make it a little bit later in morning?  We'll say 11:00,

17   Judge?

18           MS. RIPPY:  Judge, I'm really not available.  I've got

19   a full court day both in the morning and the afternoon on the

20   29th.  I am available on the 30th.

21           THE COURT:  Let's set it for the 30th at 9:30.

22           MR. KARNER:  Yes, sir.

23           DEFENDANT POKE:  Your Honor, can I speak?

24           THE COURT:  Sure.

25           DEFENDANT POKE:  I mean, counsel been having a problem.

1    She ain't been cooperating with me and preparing the sentencing

2    or this Buchmeier issue.  You told her to express herself

3    through me, but I can't get her to rely (sic) nothing to the

4    court.  No evidence.  I can't get copies of none of the

5    procedure that's going on.  I mean, it's hard to -- when I get

6    here, I don't know what's going to happen or what's going on.  I

7    don't communicate with her.  I can't call.  So, my counselor at

8    MCC told her if she got anything to relate that she can call and

9    ask for me and talk to me.

10           But I done provide her with issues that I want her to

11   provide to the court, evidence concerning the Buchmeier case.  I

12   got a drop slip here referring to my discharge where the parole

13   officer signed it saying that he did his duty and to notify me

14   sending me the letter saying that I was discharged off parole.

15   She refused to submit that to the court.

16           And not just that.  Buchmeier and Burnett don't only

17   talk about the letter.  The letter talk about any misleading

18   communication that a defendant received thinking that --

19   misleading him to think that he can possess a firearm once he's

20   discharged off parole.  I also got papers referring to that that

21   need to be submitted as evidence because it ain't just about the

22   restoration of your rights.  It's about any misleading

23   communication that a defendant received from the state without

24   the clear resurrection (sic) that he can't possess a firearm.

25   Even when the defendant is notified that he's discharged, the

1    state got to let me know point blank range that even after

2    discharge that I can't possess a firearm.  I also got documents,

3    misleading documents, that I received from the state that I'm

4    trying to submit as evidence on my behalf.

5              MR. KARNER:  Can I address that?

6              THE COURT:  Sure.

7              MR. KARNER:  This is where the defendant's intellectual

8    limitations come into play here.  I just heard counsel make that

9    argument.  When counsel addressed the objective standard and the

10   wording of the letter and the restoration of rights, she

11   addressed that exact argument that the defendant made.

12             THE COURT:  What documents do you want to present?

13             DEFENDANT POKE:  The drop slip with the parole

14   officer's signature saying that he played his duty into

15   discharging me and the misleading document -- this is a rule

16   sheet of things that I can't do -- that I can't do after I

17   discharge.  And basically this letter right here's saying that

18   after -- when I discharge, I can possess a firearm.  So, this

19   consider a misleading document.

20             THE COURT:  All right.  I'll receive those into

21   evidence.  By the way, you did not have a firearm owner's

22   identification card.

23             DEFENDANT POKE:  No.

24             THE COURT:  Right.  So, why did you think you could

25   possess a firearm without a firearm owner's identification card?

1          DEFENDANT POKE:  I mean, Buchmeier states it don't

2     matter what you thought at that time, your Honor.  It's the

3     point that if the state sends you any misleading document, then

4     the 921(a) apply to me.

5          THE COURT:  So, this misleading document led you to the

6     conclusion that you could carry a firearm even though you didn't

7     have a firearm owner's identification card?  Is that what you're

8     telling me?

9          DEFENDANT POKE:  Buchmeier and Burnett stipulate if the

10    state send you any misleading document, then them convictions

11    can't be used for federal purposes.

12         THE COURT:  All right.  But are you telling me that

13    because you received those documents from the Department of

14    Corrections that you thought that you could carry a firearm

15    without a firearm owner's identification card?

16         DEFENDANT POKE:  It ain't what you think at the time,

17    your Honor.  It's the communication that you receive under

18    Buchmeier and Burnett.

19         THE COURT:  Well, let me ask you.  You think those

20    communications authorized you to carry a firearm without a

21    firearm owner's identification card?

22         DEFENDANT POKE:  I mean, under Buchmeier and Burnett,

23    if you receive any misleading communication, you know, them

24    convictions can't be used as federal purposes.

25         THE COURT:  That's what I'm asking you.  Do you think

1     they authorize you to carry a firearm without a firearm owner's

2     identification card?

3              DEFENDANT POKE:  Your Honor, I mean, under Burnett and

4     Buchmeier --

5              THE COURT:  Well, did it authorize you or didn't it?

6              DEFENDANT POKE:  I mean, it said I could.

7              THE COURT:  Okay.

8              DEFENDANT POKE:  It's a misleading document.

9              THE COURT:  You know, I can't carry a firearm without a

10    firearm owner's identification card.  Why can you, who is a

11    convicted felon and receives a letter from the Department of

12    Corrections, have more authorization than me as far as firearms?

13             DEFENDANT POKE:  It ain't stipulate the firearm card.

14    It could have been misleading me to think that I can go get a

15    firearm card and receive a firearm, or you don't necessarily

16    need a firearm's card when you're a gun collector.

17             THE COURT:  But you didn't have one.  You didn't have a

18    firearm owner's identification card.

19             DEFENDANT POKE:  No, I didn't have a firearm card.

20             THE COURT:  All right.  We'll see you on --

21             DEFENDANT POKE:  I got one more issue, your Honor.

22             THE COURT:  Sure.

23             DEFENDANT POKE:  Dealing with the two drug convictions.

24             THE COURT:  All right.

25             DEFENDANT POKE:  The United States Supreme Court under

1    Moncrieffe v. Holder, that's another category approach dealing

2    with my predicate offense with the 1.2 grams that the Supreme

3    Court said I get to argue this at sentencing saying that the

4    judge or the jury can determine is I'm a felony (sic) and

5    conviction.  I mean, excuse me.  Is my small amount of drugs a

6    felony drug trafficking crime.  Is up to the CSA chart to

7    determine which amount of drugs or which drugs period is a

8    felony and a misdemeanor.

9            THE COURT:  Moncrieffe v. Holder.  What's the spelling?

10           DEFENDANT POKE:  M-o-n-c-r-i-e-f-f-e.  Holder,

11   H-o-l-d-e-r.  And they say this category approach also apply to

12   my prior convictions.

13           THE COURT:  All right.  I'll look at Taylor and

14   Moncrieffe.

15           DEFENDANT POKE:  Thank you.

16           THE COURT:  You're welcome.

17           MS. RIPPY:  If I might inquire, Judge.  Are you -- on

18   the 30th are we doing any of the sentencing?

19           THE COURT:  We're going to do all the sentencing.

20           MS. RIPPY:  All the sentencing.

21           THE COURT:  We're going to do everything.  By that time

22   we'll have resolved the guidelines calculations, I think.  I

23   don't think there's any other issues that I have to decide on

24   that.

25           MR. KARNER:  No, your Honor.

1          THE COURT:  We'll just go ahead with the evidence,

2     arguments, the defendant's statement, and sentence.

3          MR. KARNER:  Thank you.

4          MS. RIPPY:  All right.  Thank you.

5          THE COURT:  You're welcome.

6       I certify that the foregoing is a correct transcript from

7     the record of proceedings in the above-entitled matter.

8

9

    _____
10    Mary T. Lindbloom
    Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25